Count III of Ivo's complaint, however, asserts the following:

15. As a direct result of the Defendant's failure to use due care, the Plaintiff was seriously injured while on board the vessel. The Plaintiff's injuries were actually and proximately caused by the Defendant's negligence.

In context, this language sets forth a simple claim for negligence. Antonio does not argue that one can bring a simple negligence claim only against a shipowner. *Cf. Turner v. Wilson Line,* 242 F.2d at 418 (recognizing existence of general negligence claim after determining that defendant was not decedent's employer); *Mahramas v. American Export Isbrandtsen Lines,* 475 F.2d 165, 169 (2d Cir.1973) (similar). Nor does he provide us with any other legal support for the district court's grant of summary judgment with respect to this claim.

 The complaint apparently treats jurisdiction over Count III as "pendent" to the court's federal-question jurisdiction over the Jones Act claim in Count I. *See Mitchell v. Trawler Racer, Inc.,* 265 F.2d 426, 428 (1st Cir.1959), *rev'd on other grounds,* 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). Jurisdiction also seems proper, however, on the basis either of diversity of citizenship or of the court's general maritime jurisdiction. 28 U.S.C. §§ 1332, 1333. Since the district court's opinion indicates that its grounds for summary judgment do not extend to Count III (or to Ivo's wife's loss of consortium claim under Count VI), plaintiffs should be allowed to proceed further upon these claims in that court, with the district court permitting any necessary jurisdictional amendment.

*The district court's grant of summary judgment is affirmed as to Counts I, II, IV and V. It is vacated as to Counts III and VI. The case is remanded for further proceedings consistent with this opinion.*

**UNITED STATES of America,
Plaintiff, Appellee,**

v.

**Rosa SANTIAGO, Defendant, Appellant.**

**UNITED STATES of America,
Plaintiff, Appellee,**

v.

**Ariel SANTIAGO, Defendant, Appellant.**

**Nos. 86–1245, 86–1246.**

United States Court of Appeals,
First Circuit.

Heard Feb. 5, 1987.
Decided Sept. 14, 1987.

Martha R. Reeves, Brookline, Mass., by appointment of the Court, for defendant, appellant Rosa Santiago.

Frank D. Inserni, Hato Rey, P.R., by appointment of the Court, for defendant, appellant Ariel Santiago.

Antonio R. Bazán, Asst. U.S. Atty., with whom Daniel F. López Romo, U.S. Atty., Hato Rey, P.R., was on brief for plaintiff, appellee.

Before COFFIN, BOWNES and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

This appeal arises from a conviction for the importation and the possession with intent to distribute cocaine under 21 U.S.C. §§ 952(a), 841(a)(1) and 18 U.S.C. § 2.

I. *Background*

On November 9, 1985, a United States customs agent observed Manuel Flores disembarking from a cruise ship in San Juan,

Puerto Rico. The agent, his suspicions aroused by the man's strange manner of walking, followed him and questioned him. The agent asked Flores to remove his shoes whereupon cocaine was discovered concealed in the insoles. Flores was arrested and searched, revealing a handwritten note which read "Dupont Plaza, Room 902."

After questioning, Flores agreed to cooperate with the government in arranging a controlled delivery. He then accompanied undercover agents to the Dupont Plaza Hotel where they observed the occupants of Room 902 in the process of checking out. The occupants were later identified as defendants Ariel Santiago, Rosa Santiago, and Eugenia Osorio de Santiago, the latter of whom is not involved in this appeal. The defendants, followed by the agents, proceeded to the Palace Hotel where they registered.

About an hour later, the defendants left the hotel and went to the harbor area of San Juan. Flores and an undercover agent went and sat next to them. The agent made eye contact with Ariel and pointed to the sneakers he was wearing and then to Flores' shoes. The agent motioned "what do we do" and Ariel responded, "Palace Hotel." Ariel then asked Rosa for the room number, which she told him and he repeated to the agent.

About an hour later the agent and Flores met Ariel at a cafeteria across from the Palace Hotel. Ariel signaled to the agent to continue on to the hotel. Once inside the room, the agent told Flores to give the defendants his shoes. Eugenia placed the shoes on a table without examining them. Rosa inquired whether Flores had brought an extra pair of shoes to which he replied in the negative. Rosa then told Ariel to go downstairs and buy Flores a pair of shoes and asked Flores his shoe size. Ariel moved towards the door, but the agent reached it first, opened it, turned around and yelled "federal agents." Other agents waiting outside entered the room and assisted in arresting the defendants. A search of the room revealed approximately $8,000 in cash.

Appellants challenge the legality of their convictions on several grounds: 1) that the district court erred in denying appellants a copy of the transcript of the suppression hearing held one day prior to trial; 2) that the warrantless search and arrest of defendants in their hotel room was illegal; 3) that the evidence was insufficient to support a conviction; and 4) that the district court considered inaccurate and speculative information during sentencing. We will address these allegations *seriatim*.

## II. *Right to the Transcript*

■ On the morning of the suppression hearing defendant Ariel filed a motion for continuance of the trial, which was scheduled to begin the following day, until a transcript of the hearing could be provided. The district court, in denying the motion, stated that counsel would have to rely on their notes because the court reporter could not be forced to transcribe the hearing overnight. Appellants claim that the court abused its discretion because the transcript was vital for impeachment at trial of the government's key witness, the undercover agent. At the hearing, the agent testified that Ariel opened the door when he was leaving to buy shoes for Flores, whereas at trial, the agent testified that he himself opened the door. This is the only discrepancy alleged in the agent's testimony.

Considering the overwhelming evidence against defendants, this difference in the agent's testimony, even assuming an abuse in the court's discretion, a conclusion which is not justified by the circumstances, is not sufficient to constitute prejudice. *See, e.g.*, *United States v. Vadino*, 680 F.2d 1329, 1333–34 (11th Cir.) (admission of telephone statements of coconspirator later charged in superseding indictment, if error, harmless beyond reasonable doubt because defendant's participation in conspiracy established by overwhelming independent evidence), *aff'd per curiam*, 691 F.2d 977, 978 (1982), *cert. denied*, 460 U.S. 1082, 103 S.Ct. 1771, 76 L.Ed.2d 344 (1983); *United States v. Glover*, 677 F.2d 57, 59 (10th Cir.1982) (dictum) (admission of coconspirator's testimony before defendant's partic-

ipation in conspiracy shown, if error, harmless because testimony not particularly inculpatory and conspiracy proved by sufficient competent evidence). This minor detail would have had no impact on the jury's decision. In *United States v. Sullivan*, 694 F.2d 1348, 1349 (2d Cir.1982), the denial of a new defense counsel's motion to adjourn sentencing pending receipt of the trial transcript was held to be harmless error because no specific prejudice was shown from the lack of the transcript at sentencing. Appellants cannot appeal an error from which no harm resulted. *See* Fed.R. Crim.P. 52(a). Since there was no prejudice, we do not consider whether the district court abused its discretion in denying the motion.

### III. *Warrantless Search and Arrest*

■ The defendants aver that the district court erred in denying their motion to suppress the seized money and cocaine. *See United States v. Osorio de Santiago*, 626 F.Supp. 329 (D.P.R.1986). We disagree.

Under *Lewis v. United States*, 385 U.S. 206, 211, 87 S.Ct. 424, 427, 17 L.Ed.2d 312 (1966), the initial entry by the undercover agent for purposes of conducting the drug transaction was consensual. Defendants concede the validity of this entry, but contest the subsequent entry by fellow law enforcement officers and the ensuing warrantless search and arrests.

We uphold the subsequent entry and arrests on the basis of exigent circumstances. After the agent and the informer handed over their shoes to defendants, at which point probable cause was clearly established, defendant Ariel was moving towards the door in order to leave and purchase other shoes for the agent and informer. If Ariel had exited the hotel room, he would have discovered the federal agents waiting in the hallway. This discovery would inevitably have created the risk that the three defendants would attempt to flee or to destroy the contraband. We also note the agents' lack of knowledge as to whether the defendants were armed and the risk to other hotel guests. Although we are mindful of the Supreme Court's instruction to exercise "hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue," *Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S.Ct. 2091, 2098, 80 L.Ed.2d 732 (1984), in light of the factors in this case, we believe there was "such a compelling necessity for immediate action as [would] not brook the delay of obtaining a warrant." *United States v. Adams*, 621 F.2d 41, 44 (1st Cir.1980).

■ Appellants contend that the agents could have obtained an arrest warrant prior to arranging the controlled delivery. However, it is not clear that probable cause was established at that time. Furthermore, even if there was probable cause prior to the arrests, this does not negate the rise of exigent circumstances. *See, e.g., Cardwell v. Lewis*, 417 U.S. 583, 596, 94 S.Ct. 2464, 2472, 41 L.Ed.2d 325 (1974) ("The exigency may arise at any time, and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action."); *United States v. Cresta*, 825 F.2d 538 (1st Cir.1987) (warrantless arrest and search in hotel room valid because of exigent circumstances even though probable cause existed some time prior to entry); *United States v. Mitchell*, 538 F.2d 1230, 1233 (5th Cir.1976) (en banc), *cert. denied*, 430 U.S. 945, 97 S.Ct. 1578, 51 L.Ed.2d 792 (1977) (although agents had ample time after probable cause arose to obtain a warrant, the failure to do so does not preclude a finding of exigent circumstances); *but cf. Niro v. United States*, 388 F.2d 535, 539–40 (1st Cir.1968) (unless there are countervailing factors, a fully anticipated search and seizure cannot be justified by exigent circumstances).

Upon arresting the appellants, the agents seized incriminating evidence consisting of the shoes containing the cocaine and defendant Eugenia's purse containing approximately $8,000 cash. The appellants have never challenged the agents' seizure of these items. Although not raised on appeal, at the suppression hearing before the district court, the appellants challenged the propriety of a post-arrest inventory

search of the purse at the United States Customs House. We conclude that the inventory search was lawful. *See Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983).

## IV. *Sufficiency of the Evidence*

■ Appellant Rosa avers that the evidence is insufficient to support a conviction for aiding and abetting the importation of cocaine. On appeal, the evidence is sufficient if a reasonable person could fairly find the defendant guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government. *See United States v. Hyson*, 721 F.2d 856, 860 (1st Cir.1983).

As further detailed in our recitation of the facts, *see ante*, appellant Rosa was present at the two critical stages of the transaction and was not a mere silent observer. Rosa and Ariel made the initial contact with Flores and the undercover agent and she then relayed to them the hotel room number. Rosa was also in the hotel room during the transaction when she asked Flores if he had brought an extra pair of shoes and then told Ariel to go buy him a pair. Appellant Rosa argues that a possible interpretation of this evidence, albeit unlikely, is that Rosa thought Flores had removed his shoes because they were uncomfortable; she was merely being solicitous and was unaware of the concealed cocaine. However, as this court recently reaffirmed in *United States v. Rivera-Rodriguez*, 808 F.2d 886, 890 (1st Cir.1986), the government need not disprove every reasonable hypothesis of innocence, provided the record as a whole supports a conclusion of guilt beyond a reasonable doubt. It is up to the jury to determine which of the various proffered interpretations of the evidence is credible. *United States v. Smith*, 680 F.2d 255, 259 (1st Cir.1982) (crewmember's presence on vessel carrying large quantity of marijuana, together with reasonable inferences, supports the conviction notwithstanding defendant's contention that he was a mere passenger).

The evidence against Rosa was far from weak, and the jury's interpretation is certainly reasonable. We hold that there was sufficient evidence to support a jury finding that appellant Rosa was guilty at least as an aider and abetter.

## V. *Sentencing*

■ Appellants claim that the lower court erred in relying on speculative and inaccurate information at sentencing. The presentence report mentioned the fact that, on the same day Flores was arrested, three other crewmembers were also arrested, all carrying cocaine concealed in the insoles of their shoes. When the undercover agent and Flores met Ariel at the hotel, the latter stated: "They caught two this morning." The report then went on to conclude that these other crewmembers were also planning to deliver their cache to the defendants. At the sentencing hearing, the attorney for Eugenia Amparo requested that this latter speculative statement be stricken, and apparently it was. Defendant Ariel was sentenced next and the prosecutor stated that everything in regards to Eugenia also applied to her husband, Ariel. Obviously the stricken statement was not considered, although neither Ariel nor Rosa objected to the statement at the hearing. Appellant Rosa further complains about the prosecutor's statement that she was "equally guilty and should be equally punished," although, again, no objection was made at the hearing.

Both defendants had full opportunity at the hearing to contest the validity of the presentence report or the prosecutor's remarks. As the Seventh Circuit held in *United States v. Scalzo*, 716 F.2d 463, 469–70 (7th Cir.1983), "sentencing relief is foreclosed to defendants who have been given access to the presentence report but have failed specifically to challenge the accuracy of information contained within it." *See also United States v. Kadota*, 757 F.2d 198 (8th Cir.), *cert. denied*, 474 U.S. 839, 106 S.Ct. 120, 88 L.Ed.2d 98 (1985) (where defendant declined to address the court at sentencing, denial of Rule 35 motion was not an abuse of discretion). Similarly, in *United States v. Heller*, 797 F.2d 41, 43 (1st Cir.1986), this court stated, "[appel-

lant] is not entitled, after the fact of sentencing, to a second opportunity of right." Appellants are alleging no new facts and indeed, it would be difficult to controvert the objective evidence of the arrest of the other three crewmen.

■ Even assuming defendants had objected at trial, the statements were validly considered by the court. Appellants erroneously believe the same rules of evidence that apply at trial are also applicable during sentencing. Although the evidence of the other three arrests was not admissible at trial, it was admissible at sentencing. A judge may consider "a defendant's past criminal conduct—though there have been no convictions—in passing sentencing judgment." *Horowitz v. Henderson*, 514 F.2d 740, 741 n. 1 (5th Cir.1975). *See also Tucker v. Kemp*, 762 F.2d 1480, 1487 (11th Cir.1985) ("activities for which there has been no charge filed can be considered"). The only limitation on this is whether the information is reliable. *Id.* Obviously the fact of the arrests is reliable. The statement that this other cocaine was also intended for the defendants was a "reasonable inference ... from the evidence and relevant to the question of sentence." *Id.* The statement that defendant Rosa was "equally guilty" is also a reasonable inference from the evidence. Although the prosecutor's remarks were emotional, "our main concern is not with the emotional tenor of an argument, but with the propriety of its content." *Id.* at 1486. The presentence report and the prosecutor's comments were properly considered by the court.

Accordingly, we *affirm*.