UNITED STATES of America, Appellee,

v.

Octavio ARANGO–ECHEBERRY,
Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Ruben Dario SANCHEZ–ECHEVERRI,
Defendant, Appellant.

Nos. 90–1138, 90–1139.

United States Court of Appeals,
First Circuit.

Heard Nov. 7, 1990.

Decided March 4, 1991.

Rachel Brill by Appointment of the Court, with whom Gerardo Ortiz Del Rivero, Federal Public Defender, San Juan, P.R., was on brief, for defendant, appellant Octavio Arango Echeberry.

Rafael Gonzalez–Velez, Santurce, P.R., on brief, for defendant, appellant Ruben Dario Sanchez–Echeverri.

Carlos A. Perez, Asst. U.S. Atty., San Juan, P.R., with whom Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., was on brief, for U.S.

Before CAMPBELL and CYR, Circuit Judges, and GIERBOLINI,[*] District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Defendants-appellants Ruben Dario Sanchez–Echeverri and Octavio Arango–Echeberry appeal from convictions in the District of Puerto Rico for (1) possession with intent to distribute approximately three thousand grams of cocaine, in violation of 21 U.S.C. § 841(a)(1); (2) importing the cocaine into the customs territory of the United States, in violation of 21 U.S.C. § 952(a); and (3) possessing the cocaine on board an aircraft in violation of 21 U.S.C. § 955. On appeal, Sanchez and Arango challenge the sufficiency of the evidence. Arango also challenges the effectiveness of his counsel. We affirm.

### Facts

Defendants Arango and Sanchez were passengers on an Iberia Airlines flight from Bogota, Colombia to Madrid, Spain, which stopped in San Juan, Puerto Rico. During the stopover, the passengers waited in an in-transit lounge while the airplane was serviced and refueled. At this time, customs officials searched the in-transit luggage. Customs Inspector Carlos Ruiz identified and opened a suitcase smelling of vinegar, which, he testified, is commonly used to conceal the odor of cocaine from narcotics detection dogs. Inside the suitcase, Inspector Ruiz discovered women's and infant's clothing, a book and a photo album. Cocaine was discovered in the covers of the book and photo album. A name tag on the suitcase carried the name Maritza Sarmiento. The airline baggage ticket attached to the suitcase had a claim number 320957 and a control number 223–003. Thereafter, Customs Inspector Juan Lopez discovered another suitcase nearby with a name tag carrying the name Maritza Sarmiento, and a baggage ticket with a claim number 320981 and a control number 223–003. Two books containing cocaine were found in the second suitcase as well.

The following general practices by Iberia Airlines were established at trial: Passengers are given claim checks with numbers which correspond to the numbers on the baggage ticket attached to the suitcase. Control numbers are assigned to passengers for security purposes to allow the airline to identify a passenger with the luggage the passenger has checked. If a passenger does not appear for a flight, the airline is thereby able to retrieve the luggage which that passenger has checked. Two control numbers separated by a dash correspond to two sequential flights. The control numbers are assigned when the passenger checks in, and normally appear on the passenger's boarding pass as well as on the baggage tickets attached to the luggage and corresponding claim checks.

Inspectors Ruiz and Lopez determined from Iberia Airlines personnel that Maritza Sarmiento[1] was not listed as a passenger on the flight, but that defendant Sanchez was assigned the control numbers 223–003,[2] which corresponded to the control

---

[*] Of the District of Puerto Rico, sitting by designation.

1. This name is also spelled in the briefs and record "Maritsa" and "Sormiento." These variations in spelling are not significant, since it is not contested that the person whose name appeared on the name tag was not a passenger on the flight in question.

2. Defendants note that the passenger manifest which indicated Sanchez was assigned control number 223 for the Bogota–Madrid flight indicated that Sanchez had checked only one piece

numbers on the contraband luggage. Ruiz and Lopez inspected the passports, tickets and boarding passes of the passengers on the jetway as they reboarded the airplane for the flight to Madrid, and located defendant Sanchez. Ruiz testified that when he stopped Sanchez on the jetway, Sanchez told his travelling companion, Arango, "keep on going, I will get you later." The evidence is uncontested that Sanchez and Arango were travelling together and were assigned adjacent seats on the airplane.

Both Sanchez and Arango were detained. Sanchez was in possession of a boarding pass for the Bogota–Madrid flight with control number 223, a boarding pass for a flight from Madrid to Valencia, with control number 003, a key which opened the lock on one of the cocaine-containing suitcases, and tickets for flights returning to Bogota via Madrid. The key, however, was demonstrated at trial to open several different locks, and several different keys were demonstrated to open the lock on the suitcase in question. Arango was found in possession of a boarding pass for the Bogota–Madrid flight, and claim checks matching the baggage ticket numbers on the two cocaine-containing suitcases. Inspector Ruiz discovered the claim checks concealed in a memo book in Arango's wallet.

At trial, defendants testified that they were travelling to Spain to arrange to import auto parts for their businesses in Colombia. They testified that they did not bring the cocaine-containing suitcases to the airport; Sanchez testified he never saw those suitcases. Arango testified that he purchased the airline tickets for Sanchez and himself in Ibague, Colombia from a person named Hydel Montanez. He testified that Montanez later met them in the Bogota airport and offered to check their suitcases for them, (while defendants waited in line to pay a Colombia exit tax),

taking Arango's passport and wallet with him. Arango testified Montanez returned with the wallet and travel documents, and told defendants that a tour representative in Madrid would help them obtain their luggage and send it to their hotel. Alfonso Sanchez, defendant Sanchez's father and defendant Arango's uncle, corroborated this story, claiming to have taken the defendants to the airport, and testified as to the purpose of the trip and the intervention of the person who checked the bags for the defendants at the airport. An Iberia Airlines representative testified that on the passenger list defendants' entries did not carry the standard designation for passengers travelling in a group.

### Sufficiency of the Evidence

■ The standard for appellate review of sufficiency of the evidence calls for a determination of whether, viewing the evidence and all legitimate inferences therefrom in the light most favorable to the government, a rational jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Bernal,* 884 F.2d 1518, 1523 (1st Cir.1989); *United States v. Santiago,* 828 F.2d 866, 870 (1st Cir.1987), *cert. denied,* 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988). Here, however, after they moved unsuccessfully for a judgment of acquittal at the conclusion of the government's case pursuant to Fed.R.Crim.P. 29, Sanchez and Arango did not renew their Rule 29 motion at the close of all the evidence.[3] In these circumstances, they are deemed to have waived their motion, and an appellate court will reverse only if the evidence is so inadequate that to affirm the conviction would amount to "clear and gross" or "manifest" injustice. *United States v. Clotilda,* 892 F.2d 1098, 1100 (1st Cir.1989); *United*

---

of luggage. They further note that the passenger manifest indicated that Arango was assigned a control number of 227, that Arango's ticket did not bear his control number, and that he was listed as having two pieces of luggage. Both defendants had additional claim checks in their possession which corresponded to luggage containing their own personal clothes and toiletries.

3. Defendant Sanchez filed a motion for judgment of acquittal eight days after the guilty verdict—after the seven-day period for filing such motions provided in Fed.R.Crim.P. 29(c) had expired.

*States v. Lopez,* 709 F.2d 742, 746 (1st Cir.), *cert. denied,* 464 U.S. 861, 104 S.Ct. 187, 78 L.Ed.2d 166 (1983), *citing United States v. Greenleaf,* 692 F.2d 182, 185 (1st Cir.1982); *United States v. Kilcullen,* 546 F.2d 435, 441 (1st Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977). On the present facts, however, it is not important to the outcome what review standard we apply. The evidence was enough to convict under both standards.

■ Sanchez attacks the evidence on three grounds. First, he argues that the control number on the cocaine-containing suitcases, which corresponded to the control number on his ticket, could not be determinative of his guilt, since another person, such as Hydel Montanez, could have taken the luggage to the counter and checked it under Sanchez's name. Second, Sanchez argues that the key found in his possession does not tie him to the contraband because the key was not specific to the lock, but rather opens any lock of the type found on the suitcase. Third, he argues that association with Arango, who was found in possession of claim tickets corresponding to the contraband suitcases, was not determinative, since Arango's guilt could not be imputed to Sanchez.

In addition, defendant Arango attacks purported inconsistencies in the evidence.[4] He argues that the passenger listing indicating Sanchez checked *one* piece of luggage under control number 223 confirms that a third party may have checked the *two* contraband pieces of luggage, creating *per se* reasonable doubt of the defendants' guilt. He suggests that Iberia Airlines could have confused the passengers' control numbers as it had erred in determining the number of pieces of luggage checked under control number 223. Arango also argues that the claim checks were not determinative since no evidence was proffered that the defendants themselves checked the bags in Bogota. Arango submits that without evidence that defendants had control and possession over the suitcases in Bogota, the jury could not find guilt beyond a reasonable doubt.

■ We disagree with defendants' arguments and find that, viewing the evidence in the light most favorable to the government, a rational jury could have found the defendants guilty beyond a reasonable doubt and, *a fortiori,* no clear and gross injustice occurred. We do not require that the evidence exclude every reasonable hypothesis of innocence—the jury is free to choose among reasonable constructions of the evidence and is entitled to resolve issues of credibility for or against any such reasonable constructions. *Santiago,* 828 F.2d at 870, (*citing United States v. Rivera Rodriguez,* 808 F.2d 886, 890 (1st Cir. 1986)).

The jury could reasonably have rejected as not credible defendants' alibi that they were travelling to conduct business in auto parts, the story that Hydel Montanez checked defendants' luggage for them, and the suggestion that the luggage data evidence connecting defendants to the contraband luggage was the result of airline check-in errors. The corresponding control number, claim numbers, and key/lock, together constitute sufficient evidence of defendants' guilt. This is so particularly since Sanchez and Arango, travelling together, were independently connected to the contraband luggage—Sanchez through the control number and key and Arango through the claim checks. While it seems conceivable that, through the airline's mistake, Sanchez's control number would have appeared on the two bags, the chance that his travelling companion, Arango, would innocently possess the bags' claim checks concealed in a memo book is remote. This fact, when added to the fact that the two men were travelling together, strongly suggests the guilt of both. We find that the jury could have reasonably dismissed as an insignificant error the discrepancy in the number of bags listed under Sanchez's control number.

### Ineffective Assistance of Counsel

Defendant Arango also argues that he is entitled to a new trial because he was unconstitutionally denied the effective as-

---

4. Sanchez also joins arguments made in co-de-

fendant Arango's brief pursuant to F.R.A.P. 3(b).

sistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (to constitute ineffective assistance, counsel's performance must have been so deficient as to create a reasonable probability that but for the deficiency the outcome would have been different).  In support of this claim Arango makes two arguments. First, Arango argues that his trial counsel failed to request that the government provide information under its control concerning the procedure in the Bogota and Madrid airports for checking and retrieving luggage. Such information, he says, may have corroborated his version of the events. He theorizes that confusion in those airports would allow third parties to check and retrieve luggage registered under another passenger's name. Arango suggests that such evidence may have caused the jury to acquit. Second, Arango argues Inspector Ruiz's grand jury testimony that he discovered, opened, and tested both cocaine-containing suitcases was inconsistent with his trial testimony that Inspector Lopez discovered the second suitcase and located the cocaine inside. Arango argues that his trial counsel deficiently failed to attack Inspector Ruiz's credibility on cross-examination based on this inconsistency.

■ Based on the direct appeal record now before us, Arango has not demonstrated that the assistance of his counsel was ineffective. We do not, however, decide the issue finally. Ordinarily, we will not rule on a claim of inadequate representation when the claim was not raised first in the district court. The two reasons for this are that, first, the judge who presided over the trial is in the best position to evaluate the quality of representation; judicial economy as well as the ends of justice, require presenting the issue to the district court first; and second, an ineffective assistance of counsel claim may require inquiry into factual matters not revealed in the trial record. *United States v. Hoyos–Medina*, 878 F.2d 21, 22 (1st Cir.1989). *See also United States v. Gomez–Pabon*, 911 F.2d 847, 862–63 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 801, 112 L.Ed.2d 862 (1991). Here, for example, the record does not reveal what information the government may have had under its control concerning luggage checking procedures at the Bogota and Madrid airports. Under these circumstances, our affirmance of Arango's conviction should not be viewed as foreclosing Arango's right to seek to pursue his ineffective assistance claim by attempting a collateral attack on the conviction under 28 U.S.C. § 2255. *See Hoyos–Medina, Gomez–Pabon, supra.*

*Affirmed.*