USCA1 Opinion

 

 September 29, 1992 ____________________ September 29, 1992 ____________________ No. 91-2232 No. 91-2232 UNITED STATES OF AMERICA, UNITED STATES OF AMERICA, Appellee, Appellee, v. v. ANDRES GABRIEL BELLO-PEREZ, ANDRES GABRIEL BELLO-PEREZ, a/k/a GARBY, a/k/a GARBY, Defendant, Appellant. Defendant, Appellant. ____________________ ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Norman H. Stahl, U.S. District Judge] [Hon. Norman H. Stahl, U.S. District Judge] ___________________ ____________________ ____________________ Before Before Cyr and Boudin, Circuit Judges, Cyr and Boudin, Circuit Judges, ______________ and Hornby,* District Judge. and Hornby,* District Judge. ______________ ____________________ ____________________ Martin D. Harris with whom Damon M. D'Ambrosio, Joseph Dugan and Martin D. Harris with whom Damon M. D'Ambrosio, Joseph Dugan and _________________ ___________________ ____________ Martin D. Harris, Esquire, Ltd. were on brief for appellant. Martin D. Harris, Esquire, Ltd. were on brief for appellant. _______________________________ Robert J. Veiga, Assistant United States Attorney, with whom Robert J. Veiga, Assistant United States Attorney, with whom ________________ Jeffrey R. Howard, United States Attorney, and David A. Vicinanzo, Jeffrey R. Howard, United States Attorney, and David A. Vicinanzo, __________________ ___________________ Assistant United States Attorney, were on brief for appellee. Assistant United States Attorney, were on brief for appellee. ____________________ ____________________ ____________________ ____________________ ____________________ *Of the District of Maine, sitting by designation. *Of the District of Maine, sitting by designation. CYR, Circuit Judge. Along with thirteen other defen- CYR, Circuit Judge. ______________ dants, appellant Andres Bello-Perez was charged with conspiring to distribute cocaine in violation of 21 U.S.C. 846. Finding no error in the indictment, trial or sentence, we affirm. I I BACKGROUND BACKGROUND __________ Viewing the evidence in the light most favorable to the government, see United States v. David, 940 F.2d 722, 732-33 (1st ___ _____________ _____ Cir. 1991), cert. denied, 112 S. Ct. 605 (1991), and cert. ____ ______ ___ ____ denied, 112 S. Ct. 908 (1992), and cert. denied, 112 S. Ct. 1298 ______ ___ ____ ______ (1992), and cert. denied, 112 S. Ct. 2301 (1992); United States ___ ____ ______ _____________ v. Rivera-Santiago, 872 F.2d 1073, 1078-79 (1st Cir. 1989), the _______________ jury could have found the following facts. Beginning in the fall of 1987, New York-based Bello- Perez, with the aid of his girlfriend, Paula Beltran, supplied Peter Clark, first directly and then through a series of couri- ers, with large quantities of cocaine for resale through Clark's network of dealers in northeastern Massachusetts and coastal New Hampshire. By late 1987, Bello-Perez had become Clark's princi- pal source, supplying on average one to one and one-half kilo- grams weekly. One of Clark's lieutenants was Edward Murley, who assisted Clark by distributing cocaine supplied by Bello-Perez and by collecting payments from purchasers throughout Clark's distribution area. During the second half of 1988, 2 Murley estimated that he came in direct contact with Bello-Perez at least seven times. On December 7, 1988, Peter Clark was arrested with a kilogram of cocaine in his possession. The seizure of the cocaine left Clark owing Bello-Perez approximately $14,000, in part payment of which Murley delivered Bello-Perez $3,000 raised by Deborah Panneton, Clark's common-law wife. Murley himself owed Clark $2,000, which Bello-Perez instructed Murley to pay directly to him. Since Murley did not have the cash, he agreed to sell approximately four and one-half ounces of cocaine "front- ed" to him by Bello-Perez. The net proceeds were applied against the Clark debt to Bello-Perez. As the money raised from these sources was insufficient to compensate him for the cocaine seized from Clark, Bello-Perez, in the company of Beltran and a Dominican male named "Tony," drove north with Murley and began collecting Clark's drug debts directly from Clark's customers. Luke Bixby, one of Clark's helpers, was brought to Murley's house and taken into a bathroom by Bello-Perez and Beltran. Bixby emerged visibly shaken. While Tony stood nearby with an Uzi submachine gun, Bixby began placing telephone calls to Clark's customers, urging them to bring Bello- Perez the money they owed Clark. In further satisfaction of Clark's debt, Bello-Perez, accompanied by Tony (toting the Uzi), seized Clark's Trans Am automobile from another Clark confeder- ate, and the next day, again at gunpoint, forced Panneton to relinquish title to the car. 3 In the weeks following Clark's arrest, Murley and other former Clark associates stepped forward to take over Clark's distribution network. Murley's first drug purchase from Bello- Perez followed Clark's arrest by only three weeks. Murley testified that, through couriers (including some who had dealt with Bello-Perez in behalf of Clark), he purchased approximately nine ounces of cocaine from Bello-Perez every two weeks. Begin- ning in March 1989, Bello-Perez (and occasionally Beltran) would visit Murley in New Hampshire every week or ten days, to collect drug payments and oversee Murley's drug distribution network. On occasion, Bello-Perez would deliver drugs directly to members of Murley's network to sell, bypassing Murley altogether. On May 22, 1989, the Murley distribution chain was infiltrated by an undercover agent for the New Hampshire State Police, who arranged to purchase an ounce of cocaine from Murley for $1,000. The agent observed Paula Beltran in Murley's pres- ence when the deal was negotiated; Murley ultimately gave Beltran the agent's $1,000 in satisfaction of a drug debt owed Bello- Perez. On November 2-3, 1989, the Murley chain was infiltrated again, this time by a former Clark confederate who had agreed to cooperate with the U.S. Drug Enforcement Administration. Murley agreed to sell the federal informant four and one-half ounces of cocaine for $4,200. Bello-Perez, who was present at the time of the transaction, again supplied the cocaine. On November 8 and 15, 1989, the same federal informant purchased nine ounces of cocaine from Murley, who once again obtained the cocaine from 4 Bello-Perez. On November 6, 1990, following further investiga- tion, Bello-Perez was arrested. Count I of the indictment charged as follows: Beginning at an unknown date but at the lat- _________ __ __ _______ ____ ___ __ ___ ____ est by August, 1988, and continuing thereaf- ___ __ ______ ____ ___ __________ ter up to and including January 17, 1991, in __ _______ __ ____ the District of New Hampshire and elsewhere, ANDRES GABRIEL BELLO-PEREZ [and thirteen co- defendants] . . . did knowingly and inten- tionally combine, conspire and agree with each other and with others known and unknown to the Grand Jury, to possess with intent to distribute and to distribute quantities of cocaine, a Schedule II narcotic controlled substance, and marihuana, a Schedule I hallu- cinogenic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).2 (Emphasis added.) Four days before trial, Bello-Perez' attorney was provided with approximately 1,000 documents, including several which implicated Bello-Perez in a conspiracy involving Peter Clark and dating from the late fall of 1988. On the day of trial, government counsel supplied defense counsel with addition- al statements indicating that Clark would testify and implicate Bello-Perez in cocaine sales during 1988 and extending through December 1989. Following the two and one-half week trial, during which Clark, Beltran, Murley and a number of other co-conspira- tors testified, Bello-Perez was convicted and sentenced to 360 months in prison. We turn to the numerous claims raised on appeal. ____________________ 2The marijuana charges were dropped. 5 II II DISCUSSION DISCUSSION __________ A. Variance A. Variance ________ The indictment does not mention Peter Clark by name. Rather, it alleges generally that Bello-Perez was involved in a conspiracy beginning at an "unknown" date, "at the latest by August 1988," names a number of alleged co-conspirators, and specifies various overt acts involving (most prominently) Edward Murley. Bello-Perez contends that the conspiracy which began in 1987, led by Peter Clark, was distinct from any conspiracy that existed after Clark's arrest in late 1988, with Edward Murley at its helm. Bello-Perez therefore argues that the indictment afforded insufficient notice of the government's intention to present evidence relating to the Clark conspiracy. Citing Kotteakos v. United States, 328 U.S. 750 (1946), Bello-Perez _________ ______________ contends that his defense against what he regards as the separate and distinct "Murley conspiracy" was unfairly prejudiced by the evidence relating to the uncharged "Clark conspiracy." We reject the premise underlying his contention. Whether the evidence adduced at trial established one or more conspiracies was a question of fact for the jury. See ___ David, 940 F.2d at 732, 735; United States v. Drougas, 748 F.2d _____ _____________ _______ 8, 17 (1st Cir. 1984). In order to find a single conspiracy, the jury need have found only that Clark, Murley and Bello-Perez, pursuant to their tacit or express agreement, knowingly and intentionally "directed their efforts towards the accomplishment 6 of a common goal or overall plan" to commit the substantive offense charged in the indictment, i.e., possessing cocaine for ____ distribution. Rivera-Santiago, 872 F.2d at 1079 (quoting Drouga- _______________ _______ s, 748 F.2d at 17); United States v. Giry, 818 F.2d 120, 127 (1st _ _____________ ____ Cir.), cert. denied, 108 S. Ct. 162 (1987). The jury was permit- ____ ______ ted to consider a wide range of factors, including "the nature, design, implementation, and logistics of the illegal activity; the participants' modus operandi; the relevant geography; and the scope of coconspirator involvement." United States v. Boylan, _____________ ______ 898 F.2d 230, 241 (1st Cir.), cert. denied, 111 S. Ct. 139 ____ ______ (1990); see also David, 940 F.2d at 734 ("no mechanical test"); ___ ____ _____ Rivera-Santiago, 872 F.2d at 1079. It was not necessary for the _______________ jury to find that the alleged coconspirators joined the conspira- cy at the same time, see United States v. Kelley, 849 F.2d 999, ___ _____________ ______ 1003 (6th Cir.), cert. denied, 488 U.S. 982 (1988) (single ____ ______ conspiracy can be found even where "the cast of characters changed over the course of the enterprise"), or shared the same knowledge, beyond the tacit understanding that their illicit agreement existed, see United States v. Sanchez, 917 F.2d 607, ___ _____________ _______ 610 (1st Cir. 1990), cert. denied, 111 S. Ct. 1637, and cert. ____ ______ ___ ____ denied, 111 S. Ct. 2809 (1991); Rivera-Santiago, 872 F.2d at ______ _______________ 1079. Nor need the participants in the illicit scheme have known all their coconspirators, see Rivera-Santiago, 872 F.2d at 1079; ___ _______________ Giry, 818 F.2d at 127; United States v. Moosey, 735 F.2d 633, ____ _____________ ______ 635-36 (1st Cir. 1984), or have participated at the same time in the furtherance of their criminal venture, see United States v. ___ ______________ 7 Aponte-Suarez, 905 F.2d 483, 488 (1st Cir.), cert. denied, 111 S. _____________ ____ ______ Ct. 531 (1990), and cert. denied, 111 S. Ct. 975 (1991); United ___ ____ ______ ______ States v. Cintolo, 818 F.2d 980, 997 (1st Cir.), cert. denied, ______ _______ ____ ______ 484 U.S. 913 (1987). What was essential is that the criminal "goal or overall plan" have persisted without fundamental alter- ation, notwithstanding variations in personnel and their roles. See, e.g., United States v. Aponte-Suarez, 905 F.2d at 488 ___ ____ ______________ _____________ (finding single conspiracy even though initial venture was thwarted, where conspirators adapted same conspiratorial plan to new circumstances). At the request of Bello-Perez, without objection by the government, the jury was instructed to consider whether one or more conspiracies existed, and to return a verdict against the defendant only if it found a single conspiracy.3 Thus, there can be no question that the jury squarely rejected the multiple- conspiracy claim. Accordingly, as Bello-Perez did not move for judgment of acquittal, see, e.g., United States v. Concemi, 957 ___ ____ _____________ _______ ____________________ 3We quote the pertinent portion of the jury charge: You must keep in mind that the defendant is charged with involvement in a single conspiracy. The govern- ment must prove the existence of the single conspiracy charged in Count I of the indictment. If you find from the evidence that there existed separate conspiracies rather than a single conspiracy, then you must acquit. Before you can conclude that a single conspiracy exist- ed, you must be convinced that the alleged conspirators directed their efforts towards the accomplishment of the common goal or overall plan described in Count I of the indictment . . . . In determining whether a single conspiracy existed, you may consider the nature of the illegal activity alleged in the indictment, the method of operation and the scope and overlap of the conspira- tor involvement. 8 F.2d 942, 950 (1st Cir. 1992); United States v. Greenleaf, 692 _____________ _________ F.2d 182, 185 (1st Cir. 1982), cert. denied, 460 U.S. 1069 ____ ______ (1983), the present challenge to the sufficiency of the evidence supporting the jury's single-conspiracy finding must fail absent a showing of "clear and gross injustice," id.; see also United ___ ___ ____ ______ States v. McDowell, 918 F.2d 1004, 1009 (1st Cir. 1990). Since ______ ________ we are convinced that a rational trier of fact could have found, beyond a reasonable doubt, that there was but one conspiracy, we conclude, a fortiori, that no "clear and gross injustice" oc- _ ________ curred. See United States v. Arango-Echeberry, 927 F.2d 35, 38 ___ ______________ ________________ (1st Cir. 1990); see also McDowell, 918 F.2d at 1009. ___ ____ ________ We consider the evidence in the light most favorable to the verdict with a view to whether it was sufficient to satisfy a rational trier of fact beyond a reasonable doubt. See, e.g., ___ ____ United States v. Tejeda, Nos. 91-1332 & 1388, slip op. at 4 (1st _____________ ______ Cir. September 1, 1992). The evidence revealed that Murley and Clark began their collaboration during 1987, with Murley later emerging as a lieutenant in Clark's cocaine distribution network. Murley and other conspirators (including Bello-Perez and Beltran) stepped into (or resumed) leadership roles in the considerably smaller distribution network which persisted notwithstanding Clark's arrest. Due in considerable measure to the criminal initiative and diligence of Bello-Perez, the essential structure and function of the illicit enterprise previously led by Clark proceeded apace under new management, dominated by a familiar "core" of conspirators who survived Clark's arrest. See Kelley, ___ ______ 9 849 F.2d at 1003 (upholding "single conspiracy" finding "even where the cast of characters changed over the course of the enterprise"). Although their roles in the criminal enterprise may have changed, their modus operandi remained essentially _____ ________ unchanged. See Boylan, 898 F.2d at 242. Bello-Perez continued ___ ______ to supply Clark's former lieutenant, Murley, with substantial quantities of cocaine on a regular basis, for distribution among some of the smaller dealers in northeastern Massachusetts and coastal New Hampshire previously supplied by Clark. More to the present point, the temporal bounds of the conspiracy alleged in the indictment fairly encompassed the pre- Clark arrest period as well as the post-arrest period. Although Clark was not a named conspirator,4 the indictment alleged that the conspiracy began at an "unknown" date, "at the latest by August, 1988" a time when Clark clearly remained in charge of the distribution network supplied by Bello-Perez, and Murley was serving as Clark's lieutenant.5 Finally, contrary to Bello- ____________________ 4See United States v. Penagaricano-Soler, 911 F.2d 833, 840 ___ _____________ __________________ n.5 (1st Cir. 1990) ("[w]here . . . the indictment alleges the unlawful agreement with sufficient particularity, the defendant is not denied adequate notice of the charge merely by virtue of the failure to name all co-conspirators."). 5Moreover, the fact that the indictment charged a conspiracy beginning at an "unknown" date, "at the latest by August 1988" __ ___ ______ (emphasis added), did not preclude the evidence (including Clark's testimony) relating to events predating August 1988. See _________ ______ ____ ___ United States v. Crocker, 788 F.2d 802, 805 (1st Cir. 1986) ______________ _______ ("approximate dates in an indictment are not controlling"); United States v. Morris, 700 F.2d 427, 429 (1st Cir.), cert. ______________ ______ ____ denied, 461 U.S. 947 (1983) ("Where a particular date is not a ______ substantive element of the crime charged, strict chronological specificity or accuracy is not required."). 10 Perez' contention, the fact that the majority of overt acts detailed in the indictment took place after Clark's arrest is not determinative. The government is not required to plead or prove any overt act in furtherance of a section 846 conspiracy. United ___ ______ States v. Arboleda, 929 F.2d 858 (1st Cir. 1991); United States ______ ________ _____________ v. Williams, 809 F.2d 75, 80 (1st Cir. 1986), cert. denied, 481 ________ ____ ______ U.S. 1030 (1987). Although overt acts are "gratuitously set forth in the indictment," Aponte-Suarez, 905 F.2d at 488, the _____________ government is not limited at trial to proof of the alleged overt acts; nor is the indictment rendered insufficient for failure to plead other overt acts. B. Motion to Dismiss B. Motion to Dismiss _________________ Bello-Perez moved to dismiss the indictment on the additional ground that he was unfairly surprised by delayed dis- closure of Clark's role in the conspiracy (and Clark's impending testimony).6 The district court properly rejected the claim. First, disclosure was not impermissibly delayed. Immediately prior to jury empanelment, the government disclosed that Clark was a potential prosecution witness, and made available Clark's prior statements. Contrary to Bello-Perez' implicit assumption, there is no constitutional or statutory requirement that the ____________________ 6As we have stated, the alternate ground for the motion to dismiss that the admission of Clark's testimony engendered a "fatal variance" between the crime charged in the indictment and the proof presented at trial is groundless. In the present case, the appropriate relief, if any, was not dismissal of the indictment but exclusion of Clark's testimony. Bello-Perez does not challenge the district court ruling which declined to exclude the Clark testimony. 11 identity of prosecution witnesses be disclosed before trial, see ___ United States v. Reis, 788 F.2d 54, 58 (1st Cir. 1986); United _____________ ____ ______ States v. Barrett, 766 F.2d 609, 617 (1st Cir.), cert. denied, ______ _______ ____ ______ 474 U.S. 923 (1985); nor, under the Jencks Act, was the govern- ment required to produce the prior statements of its prospective witnesses until after their direct examination. 18 U.S.C. 3500(a); United States v. Arboleda, 929 F.2d 858, 862-63 (1st _____________ ________ Cir. 1991); United States v. Grandmont, 680 F.2d 867, 874 (1st _____________ _________ Cir. 1982). Moreover, even if Bello-Perez had shown unfair surprise resulting from disclosure of the Clark evidence so near the time of trial, the appropriate procedural relief in these circumstanc- es would not have been the dismissal of the indictment, but a continuance of the trial to permit defense counsel to meet the surprise evidence. Bello-Perez did not request a continuance, let alone demonstrate grounds warranting dismissal of the indict- ment. See United States v. Osorio, 929 F.2d 753, 758 (1st Cir. ___ _____________ ______ 1991) ("Generally, we have viewed the failure to ask for a continuance as an indication that defense counsel was himself satisfied [that] he had sufficient opportunity to use the evi- dence advantageously") (citing cases). C. Evidentiary Claims C. Evidentiary Claims __________________ Bello-Perez next asserts a right to a new trial due to alleged errors in the admission of various government exhibits, including a photograph of a kilogram of cocaine and a photograph of Bello-Perez in the company of Clark and Murley. 12 13 1. Photograph of Cocaine 1. Photograph of Cocaine _____________________ During Peter Clark's direct testimony on the first day of trial, the government offered a photograph depicting Clark holding a kilogram of cocaine. The photograph was admitted, over objection, at least initially for the purpose of showing the jury what a kilogram of cocaine looked like. Later, however, Clark testified that the cocaine depicted in the photograph had been bought from Bello-Perez. Bello-Perez argues that the probative value of the photograph was substantially outweighed by its prejudicial effect. See Fed. R. Evid. 403. ___ A trial court's decision to admit evidence over a Rule 403 objection is accorded considerable deference. "Only rarely and in extraordinarily compelling circumstances will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." Freeman v. Package Mach. _______ ______________ Co., 865 F.2d 1331, 1340 (1st Cir. 1988); see also Doty v. ___ ___ ____ ____ Sewall, 908 F.2d 1053, 1059 (1st Cir. 1990) (extremely deferen- ______ tial standard, "perhaps even higher" than abuse of discretion) (citing S. Childress & M. Davis, 1 Standards of Review). Even if ______ ___________________ we were persuaded that the photograph somehow unfairly prejudiced ________ Bello-Perez, we could not conclude that any unfair prejudice substantially outweighed the probative value. The photograph tended to corroborate the testimony of a key government witness relating to the distribution of large quantities of cocaine. Cf. ___ United States v. Gonzalez, 933 F.2d 417, 427 (7th Cir. 1991) (no ______________ ________ 14 error in displaying large quantity of seized cocaine, to assist jury in understanding logistics of transportation and impossibil- ity of personal use). 2. Photograph of Murley, Clark and Bello-Perez 2. Photograph of Murley, Clark and Bello-Perez ___________________________________________ The district court admitted a photograph of Murley, Clark and Bello-Perez with their arms around each other's shoulders. Bello-Perez objected on the ground that no proper foundation had been laid for the introduction of the photograph, whereas in fact it is the objection which was without foundation. Clark testified that the photograph was taken in his living room during the last half of 1988; i.e., during the course of the ____ conspiracy alleged in the indictment. See Lucero v. Stewart, 892 ___ ______ _______ F.2d 52, 55 (9th Cir. 1989) (approximate date of photograph adequate for authentication). On appeal, Bello-Perez asserts for the first time that the photograph should have been excluded under Rule 403. As the objection was not preserved below, we review only for plain error, "a demonstration that justice has miscarried or that the trial's basic fairness has been compromised." United States v. _____________ Hadfield, 918 F.2d 987, 995 (1st Cir. 1990), cert. denied, 111 S. ________ ____ ______ Ct. 2062 (1992). As the photograph itself, simply depicting a friendly meeting among the alleged conspirators, portended no unfair prejudice whatever, the claim is frivolous. 3. Photocopies of Notebooks and Papers 3. Photocopies of Notebooks and Papers ___________________________________ 15 Bello-Perez challenges the admission of photocopies of certain documents seized at the time of Clark's arrest. The documents contained clearly relevant information concerning Clark's cocaine distribution operations and drug debts, as well as Bello-Perez' telephone and beeper numbers. As Bello-Perez identifies no unfair prejudice resulting from the admission of the information in these documents, and we discern none, the claim is rejected.7 4. Photographs of Bello-Perez 4. Photographs of Bello-Perez and Associates in Santo Domingo and Associates in Santo Domingo _______________________________ Bello-Perez contends that several photographs depicting Bello-Perez, Murley and Robinson in Santo Domingo were irrelevant, particularly a photograph of Murley holding a firearm. Murley later testified, without contradiction, that Bello-Perez had given him the gun. We find no merit to these claims, as all the ____________________ 7Although Bello-Perez asserts on appeal that the photocopies were not properly authenticated, Clark vouched at trial that each photocopy represented a fair and accurate reproduction. See Fed. ___ R. Evid. 101(4). Thus, this claim too is frivolous. Some of the documents were in the handwriting of Deborah Panneton, Clark's common-law wife. Bello-Perez complains that "there was no testimony that Clark could authenticate her hand- writing or was familiar therewith." These documents found among Clark's personal papers and reflecting Clark's handwriting as well as Panneton's contained sufficient intrinsic indicia of authorship to permit their authentication by Clark under Fed. R. Evid. 901(a); see also id. 901(b)(1), (4); Drougas, 748 F.2d ___ ____ ___ _______ at 26 (authentication of handwritten lists of coconspirators through "the source of the [lists], the circumstances surrounding their seizure, the fact that the information corresponded to other evidence of the participants in the conspiracy, and the extreme unlikelihood that such a list would be prepared by one not privy to the operations of the conspiracy"). 16 photographs tended to corroborate Murley's testimony that he and Robinson were closely associated with Bello-Perez. 5. Travel Documents 5. Travel Documents ________________ At trial, Bello-Perez asserted a relevancy challenge to the introduction of Murley's boarding pass for the trip to Santo Domingo, and a travel document containing certain Santo Domingo telephone numbers Murley received from Bello-Perez during their trip. Bello-Perez has failed to mount any "effort at developed argumentation" in support of this claim. See United States v. ___ _____________ Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied, 110 S. Ct. 1814 _______ ____ ______ (1990) (claim deemed waived in such circumstances). In any event, the challenged exhibits clearly corroborate Murley's testimony that the conspirators associated closely during the course of the conspiracy. 6. Anonymous Letter 6. Anonymous Letter ________________ Bello-Perez objected to the introduction of an anony- mous letter, not written in Bello-Perez' handwriting, urging Murley not to implicate the author in drug dealing. The objec- tion was based on lack of authentication. Anonymous correspon- dence may be sufficiently distinctive in its "appearance, con- tents, substance, internal patterns or other distinctive charac- teristics," within the meaning of Fed. R. Evid. 901(b)(4), to meet the authentication requirement. See United States v. ___ ______________ Ingraham, 832 F.2d 229, 236 (1st Cir. 1987), cert. denied, 486 ________ ____ ______ U.S. 1009 (1988) (authentication of telephone call and anonymous 17 letters based on caller-author's "peculiar obsession with [and approach to] the same obscure litigation," amounting to an idio- syncratic "signature"); see also United States v. McMahon, 938 ___ ____ _____________ _______ F.2d 1501, 1508-09 (1st Cir. 1991) (authentication of unsigned note based on circumstantial indicia of authorship); United ______ States v. Newton, 891 F.2d 944, 947 (1st Cir. 1989) (authentica- ______ ______ tion of unsigned document based on internal references to defend- ant's girlfriend, wife, lawyer and aliases). There was ample circumstantial evidence that the letter originated with Bello-Perez. The given name of the addressor on the envelope, though unclear, appears to be "ANDREWS" or "ANDREU- S", similar to Bello-Perez' first name "Andres". The return address inside the letter gives the post office box of the state prison where Bello-Perez was incarcerated pending trial. The author identifies himself as an Hispanic; Bello-Perez was the only Hispanic state-prison inmate known to Murley. The author plainly implies that he is facing drug charges and that Murley might be asked to testify against him. Finally, the letter includes statements about family problems known to Bello-Perez. In light of these indicia of Murley's authorship, the discrepan- cies adverted to by the defense went to the weight of the evi- dence, not its admissibility. See Ingraham, 832 F.2d at 233. ___ ________ 7. Beltran Testimony 7. Beltran Testimony _________________ Paula Beltran, Bello-Perez' girlfriend, twice blurted out at trial that Bello-Perez had sustained a gunshot wound in an event unrelated to the alleged conspiracy. The district court 18 denied the ensuing motion for mistrial, choosing instead on each occasion to give a cautionary jury instruction. Motions for mistrial address the discretion of the trial court. United States v. Chamorro, 687 F.2d 1, 6 (1st ______________ ________ Cir.), cert. denied, 459 U.S. 1043 (1982); United States v. ____ ______ ______________ Pappas, 611 F.2d 399, 406 (1st Cir. 1979). There was no abuse of ______ discretion in this instance. First, there is no evidence that Beltran's statements were deliberate, or the result of bad faith on the part of the government or its witness. Bello-Perez nevertheless urges that Beltran's statements left the jury with the "unmistakable impression" that Bello-Perez was involved in violent activities. In our view, however, such an impression was neither inevitable nor unmistakable, considering the context, as Beltran merely mentioned the gunshot wounds, not their source or the surrounding circumstances. Second, through independent evidence Bello-Perez already had been tied to the possession and use of firearms. Third, the independent evidence of guilt against Bello-Perez was overwhelming. See United States v. ___ _____________ Sclamo, 578 F.2d 888, 891 (1st Cir. 1978) (denial of mistrial ______ inappropriate in light of cautionary instruction and "strong case and substantial evidence produced by the government"); see also ___ ____ United States v. Scelzo, 810 F.2d 2, 5 (1st Cir. 1987) (consider- _____________ ______ ing "extremely strong" case against defendant in upholding denial of mistrial). Finally, we conclude that any significant risk of unfair prejudice resulting from Beltran's statements was "effica- 19 ciously dispelled" by the district court's strong cautionary instructions. See Chamorro, 687 F.2d at 6. ___ ________ D. Sentencing D. Sentencing __________ Bello-Perez advances various challenges to the 360- month sentence imposed by the district court. First, he asserts that the court erred in calculating the base offense level at 36 (50-150 kilograms of cocaine), see U.S.S.G. 2D1.1(c)(4), rather ___ than at base level 34 (15-50 kilograms), see id. 2D1.1(c)(5). ___ ___ The crux of the claim is that he distributed no more than 7.5 kilograms to Murley between 1988 and 1990, and that the sentenc- ing judge improperly considered the much larger quantities of cocaine previously distributed in furtherance of the putatively separate conspiracy involving Peter Clark.8 As we reject the "separate conspiracy" theory, see supra part IIA, the present ___ _____ claim must fail. See United States v. Moreno, 947 F.2d 7, 9 (1st ___ _____________ ______ Cir. 1991) (sentencing court may consider "quantities . . . of ____________________ 8The presentence investigation report, which credits Clark's testimony that he had obtained approximately 1.5 kilograms per week from Bello-Perez, ascribed a total of approximately 80 kilograms of cocaine to Bello-Perez during Clark's involvement in the conspiracy. On appeal, Bello-Perez challenges Clark's estimates as "inconsistent and contradictory." The resolution of any conflict in Clark's estimates was for the trier of fact. See ___ United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990) ("[T]he _____________ ____ sentencing court's choice among supportable alternatives cannot be clearly erroneous."). We note, moreover, that even if Bello- Perez had distributed only 0.9 kilograms of cocaine weekly to Clark an amount well within the estimate Bello-Perez himself cites Bello-Perez would be accountable for over 42.5 kilograms during the course of the Clark conspiracy. Accordingly, in combination with the 7.5 kilograms distributed to Murley, the minimum 50 kilogram quantity required to trigger base offense level 36 was met. 20 [cocaine] not specified in the count of conviction . . . if they were part of the same course of conduct or . . . common scheme or plan as the count of conviction."), citing U.S.S.G. 1B1.3(a- ______ )(2), comment (backg'd). Next, Bello-Perez asserts that the court committed clear error in imposing a four-level enhancement under U.S.S.G. 3B1.1(a) for his role as an organizer or leader of criminal activity involving five or more participants. See United States ___ _____________ v. Preakos, 907 F.2d 7, 9-10 (1st Cir. 1990) ("clearly erroneous" _______ standard applies to determination of "role in offense"). Since Bello-Perez apparently does not question that the criminal enter- prise charged in the indictment was sufficiently extensive to come within U.S.S.G. 3B1.1(a), we understand him to challenge the district court determination that he had a "leadership role" in the criminal enterprise. The record, on the other hand, reveals that Bello-Perez supplied and "fronted" the cocaine and, after Clark's arrest, directly supervised the collection of drug debts from Clark's customers and provided operational oversight _______ _________ of Murley's cocaine distribution network on a regular basis. See ___ Preakos, 907 F.2d at 9-10; see generally U.S.S.G. 3B1.1(a) _______ ___ _________ (application note 3) ("Factors the court should consider include the exercise of decision making authority, the nature of partici- pation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing 21 the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others."). Finally, Bello-Perez assigns error to the two-level enhancement for use of a firearm during the offense. As the enhancement was not challenged below, we review for "plain error." United States v. Morales-Diaz, 925 F.2d 535, 540 (1st _____________ ____________ Cir. 1991). The claim is meritless. Although he was not found to have been in actual possession of a firearm, Bello-Perez was accountable for the use of firearms by his assistant ("Tony") in strong-arming drug debt collections in furtherance of the crimi- nal venture. See United States v. Bianco, 922 F.2d 910, 912 (1st ___ _____________ ______ Cir. 1991) (enhancement appropriate where "codefendant's posses- sion of a firearm in furtherance of their joint criminal venture was reasonably foreseeable by the defendant"); see also David, ___ ____ _____ 940 F.2d at 742 (defendant "responsible for the gun's use [to intimidate coconspirator] whether or not he actually held the gun himself"); McDowell, 918 F.2d at 1011 (enhancement appropriate if ________ firearm present, "unless it is clearly improbable that the weapon and the offense were connected"). The district court judgment is affirmed. _______________________________________ 22