**UNITED STATES of America, Appellee,**

v.

**Angel TORRES LOPEZ, Defendant, Appellant.**

**No. 87–1441.**

United States Court of Appeals, First Circuit.

Heard May 6, 1988.

Decided July 13, 1988.

Rehearing and Rehearing In Banc Denied Aug. 22, 1988.

Luis F. Abreu Elias and Blas C. Herrero, Hato Rey, P.R., for defendant, appellant.

H. Manuel Hernandez, Asst. U.S. Atty., Crim. Div., with whom Daniel F. Lopez–Romo, U.S. Atty., Hato Ray, P.R., was on brief, for appellee.

Before CAMPBELL, Chief Judge, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

This is an appeal by Angel Torres Lopez from a jury conviction of violating the substantive and conspiracy sections of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c) and (d).[1] Appellant raises a number of issues on appeal, which, because of his failure to file a separate statement of issues in his brief as required by Federal Rule of Appellate Procedure 28(a)(2), we have had to glean from the argument section of his brief. The issues are: (1) the applicability of the five-year statute of limitations; (2) whether the defendant was denied his right to a speedy trial; (3) whether the defendant's sixth amendment right to compulsory process was violated; and (4) the sufficiency of the evidence.

We address the issues seriatim.

## I. THE STATUTE OF LIMITATIONS

Although RICO has no express statute of limitations for either civil actions or criminal prosecutions, it is accepted that the five-year statute of limitations prescribed in 18 U.S.C. § 3282 applies to criminal prosecutions. *Agency Holding Corp. v. Malley–Duff & Associates,* —— U.S. ——, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987). The limitations period is measured from the time at which the crime is complete. *Toussie v. United States,* 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970); *United States v. Persico,* 832 F.2d 705, 713 (2d Cir.1987).

We first consider the indictment which is dated November 24, 1986. This was a superseding indictment; the original indictment was dated June 26, 1986. As will become apparent, the five-month differential does not affect the applicability of the statute of limitations. Count One charged that defendant and nine others[2] constituted a RICO enterprise which engaged in a pattern of racketeering activity. The racketeering activity was alleged to consist of the crimes of murder, armed robbery, kidnapping, arson, theft of interstate shipment of goods, extortion and obstruction of justice. Five of the alleged members of the enterprise, including defendant, were or had been members of the Puerto Rico Police Department during the alleged period of racketeering activity. Defendant was charged in Count One with participating in seven racketeering acts: armed robbery; two acts of arson; robbery; robbery and murder; contract murder; and obstruction of justice and threatening to kill a government witness. All of these racketeering acts, except the last one, were alleged to have been completed more than five years prior to the date of the indictment. The charge of obstruction of justice and threatening to kill a government witness was alleged to have taken place in June and July of 1985, well within five years of both the original and superseding indictment.

Count Two of the indictment charged defendant with conspiracy to violate RICO by participating in an enterprise whose purpose was to engage in racketeering acts prohibited by the criminal laws of Puerto Rico and the United States. The time span of the conspiracy was alleged to be "[f]rom on or about October, 1973, up to and including the date of the filing of this indictment."

Count Five of the indictment, a non-RICO count, charged under 18 U.S.C. § 1503 that in July of 1985 the defendant

---

**1.** 18 U.S.C. § 1962(c) and (d) provide:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

**2.** Three of the alleged members of the enterprise were named but not charged.

endeavored to obstruct justice by meeting with Luis Gomez–Ferriero, one of the other charged defendants, and threatening to kill him if he cooperated with the FBI and the Grand Jury in their investigation of the RICO violations.

The jury verdicts add another factor to the statute of limitations issue. The jury executed two verdict forms. The first, entitled "Verdict," found the defendant guilty as charged on Count One (substantive count) and Count Two (conspiracy count). On the same form the jury found the defendant not guilty as charged in Count Five (obstruction of justice count).

The second verdict form was entitled "Special Verdict Form." The jury was asked to state whether the defendant was guilty or not guilty as to each of ten listed racketeering acts. The acts were numbered, we assume, to correspond with the racketeering acts as stated in the indictment. The special verdict form with the findings of the jury is reproduced below:

WE, THE JURY, FIND: the defendant, ANGEL TORRES LOPEZ:

| | |
|---|---|
| Guilty | of Racketeering Act No. 1 |
| Guilty/Not Guilty | of Racketeering Act No. 4 |
| Guilty/Not Guilty<br>Guilty | of Racketeering Act No. 5 |
| Guilty/Not Guilty | of Racketeering Act No. 7 |
| Guilty/Not Guilty | of Racketeering Act No. 11 |
| Guilty/Not Guilty<br>Not Guilty | of Racketeering Act No. 12(A) |
| Guilty/Not Guilty<br>Not Guilty | of Racketeering Act No. 12(B) |
| Guilty/Not Guilty<br>Not Guilty | of Racketeering Act No. 12(C) |
| Guilty/Not Guilty<br>Not Guilty | of Racketeering Act No. 18(A) |
| Guilty/Not Guilty<br>Not Guilty | of Racketeering Act No. 18(B) |
| Guilty/Not Guilty | |

We first note that the indictment does not list any racketeering acts numbered as 12(A), 12(B), and 12(C). Racketeering act No. 12 is described as the contract murder of Luis Rolon; it has no component parts. It is racketeering act number 11 that is broken down into components (A), (B), and

(C). Since the jury returned a verdict of not guilty as to act number 12, we do not think this error in the form has any adverse effect on the general verdict findings. Nor do we find it significant that the jury made no findings as to acts numbers 4, 7, and 11. We assume that the jury disagreed as to whether the government carried its burden of proof on these three acts.

It is, however, relevant to point out that the two racketeering acts of which the defendant was found guilty, numbers 1 and 5, were alleged to have taken place in October of 1973 and on December 19, 1974, more than ten years before the date of the indictment.

■ We do not think, as the parties apparently do, that the special verdict findings are inconsistent with the general verdict which found the defendant guilty on Counts One and Two and not guilty on Count Five. First, it is obvious that the jury finding of not guilty on racketeering acts number 18(A) and (B) is consistent with its finding on the general verdict of not guilty on Count Five because acts 18(A) and (B) were the factual basis for Count Five. Second, the jury finding of guilty on racketeering acts numbers 1 and 5 required, under the court's instructions, a finding of guilty on Count One, if the elements of the offense had been proved. The court instructed the jury on Count One as follows:

> In order to establish the offense charged in Count One of the indictment, five essential elements must be established beyond a reasonable doubt, as follows: First, that defendant was employed by or associated with an enterprise, as defined in these instructions.
>
> Second, that the defendant engaged in a pattern of racketeering activity, as hereinafter defined, by knowingly and willfully aiding and abetting in the commission of at least two acts of racketeering activity, as alleged in this indictment and hereafter explained.
>
> Third, that at least two acts of racketeering activity occurred within ten years of each other; that one of such offenses

took place after October 19, 1970; and that the offenses were connected with each other by some common scheme, plan or motive so as to constitute a pattern and not merely a series of disconnected acts.

Fourth, that through the commission of two or more connected offenses, the defendant conducted or participated in the conduct of the enterprise.

And fifth, that the enterprise engaged in or that its activities affected interstate commerce.

The racketeering acts of which defendant was found guilty on the special verdict form took place in October of 1973 (No. 1) and on December 19, 1974 (No. 5). If we assume, as we must, that the elements charged were proved beyond a reasonable doubt, then the special finding of the jury was not only consistent with the general verdict finding of guilty on Count One, it was the factual basis for it. The question, therefore, is whether the two racketeering acts were time-barred.

We, therefore, turn to the basic issue, the applicability of the five-year statute of limitations. As might be expected, the parties take entirely opposite positions on this. Appellant argues that the indictment should be dismissed in toto. It is his contention that the two racketeering acts of which he was found guilty were time-barred by the statute of limitations. This means, he asserts, not only that the substantive count is invalid, but that the conspiracy count also falls because both counts are inextricably intertwined.

The government, on the other hand, urges that neither the substantive count nor the conspiracy count are barred by the statute of limitations. As to the substantive count, it stresses that RICO is a continuing violation statute. The import of this, according to the government, is that a member of a RICO enterprise is responsible for all the offenses committed by the enterprise regardless of whether he directly participated in each racketeering act. Under this theory, the statute of limitations begins to run from the date of the latest act committed by the enterprise, not the latest act in which a defendant participated. Here, the latest racketeering act charged in the indictment, not counting the one of which defendant was found not guilty, was completed in September of 1982, well within the five-year limitation period. That defendant was not charged with participating in that act is immaterial, argues the government, because he was found to be a member of the enterprise. Therefore, the government concludes, the statute of limitations is no bar to defendant's conviction on the substantive count.

The government's position as to the conspiracy count is by contrast simple and straightforward: the conspiracy count is separate from the substantive count and by its own terms extended to the date of the indictment. Because the government proved that the conspiracy did not terminate until after the indictment and that defendant did not withdraw from it, the statute of limitations does not apply to Count Two.

We think that under recognized legal principles the substantive and conspiracy counts must be treated separately for statute of limitations purposes. "Traditionally the law has considered conspiracy and the completed substantive offense to be separate crimes." *Iannelli v. United States*, 420 U.S. 770, 777, 95 S.Ct. 1284, 1289, 43 L.Ed.2d 616 (1975). In *United States v. DeVincent*, 632 F.2d 155, 159 (1st Cir. 1980), we held that a RICO conspiracy count was separate from a RICO substantive count, pointing out that proof of an agreement is necessary to establish a conspiracy, but proof of the commission of a crime is unnecessary to make out a conspiracy. Proof of the conspiracy focuses on the agreement, proof of the substantive crime focuses on the acts of the defendant. In *United States v. Winter*, 663 F.2d 1120, 1136 (1st Cir.1981), we rejected the contention that in order for a defendant to be found to have agreed to participate in a RICO conspiracy he must have actually committed two or more predicate crimes. Citing to *United States v. Cruz*, 568 F.2d 781, 782–83 (1st Cir.1978), and *United States v. DeVincent*, 632 F.2d at 159, we

emphasized that a RICO conspiracy count is separate from the substantive count, and held that it "must charge as a minimum that each defendant agreed to commit two or more specified predicate crimes in addition to charging an agreement to participate in the conduct of an 'enterprise's' affairs through a 'pattern of racketeering activity.'"

■ We have joined those circuits holding that the commission of "overt acts" is not required for a RICO conspiracy conviction. *United States v. Angiulo*, 847 F.2d 956, 964 (1st Cir.1988). Since no overt acts are required to be proved in a RICO conspiracy case, the conspiracy continues as long as its purposes have neither been abandoned nor accomplished. *United States v. Coia*, 719 F.2d 1120, 1124 (11th Cir.1983).

■ The Second Circuit has already decided the identical issue now facing us. In *United States v. Persico*, 832 F.2d 705, it held that the statute of limitations for a RICO conspiracy, 18 U.S.C. § 1962(d), "should not begin to run until the accomplishment of or abandonment of the objectives of the conspiracy." *Id.* at 713. The Second Circuit also held that in order to satisfy the statute of limitations for the substantive count, 18 U.S.C. § 1962(c), the government must prove that the defendant committed at least one predicate racketeering act within the limitations period of five years. *Id.* at 714. It held, and we agree, that this

> comports with the structure of section 1962, which treats conspiracies to violate RICO and substantive RICO offenses separately. The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are proscribed by section 1962(d).

*Id.* We also agree with our sister circuit that to accept the government's view of the applicability of the statute of limitations to section 1962(c) would convert that substantive section to a conspiracy section. *Id.*

We, therefore, reverse the conviction of the defendant on Count One because the racketeering acts of which he was found guilty were time-barred.

■ We also hold that the conspiracy count was not barred by the statute of limitations. The other members of the enterprise did not enter pleas until after the indictment was filed. And there is no suggestion that defendant withdrew from the alleged conspiracy at any time.

## II. THE SPEEDY TRIAL ISSUE

■ Appellant argues that because one hundred forty-nine days elapsed between the date of his arraignment and the start of trial, the Speedy Trial Act was violated. The Act, 18 U.S.C. § 3161(c)(1), requires that a defendant be brought to trial within seventy days of the "filing date of the ... indictment or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." The first indictment in this case was filed on June 26, 1986, and the initial appearance of defendant in district court was on June 27. The trial started on January 27, 1987. Appellant is correct that there was a delay of one hundred forty-nine days (within one or two days) between the time he first appeared before a judicial officer and the start of the trial. This, however, is only the starting point for a determination of whether there has been a violation of the Speedy Trial Act. Appellant glides over the provision for excludable delay set forth in section 3161(h). He pointedly ignores (h)(1)(F), despite the myriad of pretrial motions filed by the defendants, including appellant. 18 U.S.C. § 3161(h)(1)(F) provides:

> (h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
> (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—
>
> (F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on,

or other prompt disposition of, such motion[.]

Although defendant urges that we disregard *Henderson v. United States,* 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986), we cannot do so. Its application to this case is, despite appellant's suggestion to the contrary, not retroactive. *Henderson* was decided on May 19, 1986, prior to the filing of the first indictment. We can understand why appellant wants *Henderson* shunted aside. It deals specifically with section 3161(h)(1)(F) of the Speedy Trial Act. The Court made two holdings:

> Congress intended subsection (F) to exclude from the Speedy Trial Act's 70-day limitation all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is "reasonably necessary."

> The remaining issue is whether subsection (F) excludes time after a hearing on a motion but before the district court receives all the submissions by counsel it needs to decide that motion. *Cf.* § 3161(h)(1) (excluding "[a]ny period of delay resulting from other proceedings concerning the defendant"). Although the language of subsection (F) is not clear on this point, we are convinced that its structure, as well as reason, requires that such time be excluded.

*Id.* 106 S.Ct. at 1876 and 1877. This was the controlling law at the time the first indictment was returned.

■ The docket sheet reveals that there were at least sixty-three pretrial motions filed by the defendants. A pretrial motion resulting in excludable time for one defendant also stops the Speedy Trial clock for all codefendants. *United States v. Anello,* 765 F.2d 253, 256 (1st Cir.), *cert. denied,* 474 U.S. 996, 106 S.Ct. 411, 88 L.Ed. 361 (1985); *United States v. Rush,* 738 F.2d 497, 503 (1st Cir.1984), *cert. denied,* 470 U.S. 1004, 105 S.Ct. 1355, 84 L.Ed.2d 378 (1985). There was no Speedy Trial violation.

## III. DENIAL OF COMPULSORY PROCESS

One of the principal witnesses for the government was Alejo Maldonado Medina. Maldonado was the leader and superior officer of the group of policemen who, under the cover of their uniforms and using information privy only to the police, engaged in a long series of criminal acts that ran the gamut from murder to theft of goods from interstate shipments. Maldonado entered into a plea agreement with the government and pled guilty prior to trial to kidnapping, one of the racketeering acts specified in the indictment.[3] At trial, Maldonado was asked about the terms of the plea agreement by the prosecutor. He testified, inter alia, that one of the terms was that he tell about all the crimes that he had committed and that if he did not testify truthfully at defendant's trial, he could be prosecuted for the "other" crimes. Maldonado was then asked to inform the jury of all the crimes in which he had been involved. During his lengthy recital, he named seven persons whom he alleged had participated with him in some of the crimes: Dr. Criado, a pathologist; Superior Court Judge Felix Ortiz; Attorney Felipe Bencio Sanchez; Luis Bared; Ernest Kaplan; Attorney Miguel Rivera Garcia; Colonel Miguel A. Rivera of the Puerto Rico police; and Hector Rivera Cruz, Minister of Justice for Puerto Rico.

Maldonado's testimony can be summarized as follows: Dr. Criado helped him cover-up the homicide of a person named Papo Bolso; Felix Ortiz and Attorney Felipe Bencio Sanchez participated in an illegal attempt "to benefit a defendant" in a murder case. Bared was part of a conspiracy, not carried out, to murder a woman; Kaplan was involved in a false insurance claim for breaking and entering; Attorney Miguel Rivera was involved in an attempt to fix an abortion case; Colonel Rivera gave false testimony in a civil rights case; and Hector Rivera Cruz was part of a conspiracy, never carried out, to kill an F.B.I. undercover agent.

---

**3.** Defendant was not involved in this particular crime.

After this testimony, defendant moved that the court authorize subpoenas for the seven named individuals. Defense counsel stated that the reason for the subpoenas was to attack the credibility of Maldonado. The motion was denied.

■ There can be no question that the a defendant's sixth amendment right to compulsory process for "obtaining witnesses in his favor" is one of the fundamental due process rights. *Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973); *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967); *United States v. Houghton,* 554 F.2d 1219, 1222 (1st Cir. 1977). This does not mean, however, that a defendant has a right to have the court authorize subpoenas for any witnesses he wants. There must be some showing that their testimony would be both material and helpful. *Compare United States v. Valenzuela–Bernal,* 458 U.S. 858, 873, 102 S.Ct. 3440, 3449, 73 L.Ed.2d 1193 (1982) (before government could be burdened with maintaining illegal aliens in this country for defendant's use as witnesses at his trial for criminally transporting aliens, defendant had to show that their testimony would be both "material and favorable to the defense"); *Roviaro v. United States,* 353 U.S. 53, 60–61, 77 S.Ct. 623, 627–28, 1 L.Ed. 2d 639 (1956) (identity of informer must be revealed where it is relevant and helpful to the accused and essential to a fair determination of the case); *United States v. Bailey,* 834 F.2d 218, 222–24 (1st Cir.1987) (balancing the interest of defendant versus that of government entitled defendant to court-supervised access to jurors where defendant was accused of endeavoring to illegally influence a juror).

■ Our review of the record and the indictment reveals that none of the alleged crimes attributed to the named individuals were mentioned directly or indirectly in the indictment, and none of them had anything at all to do with defendant. The testimony of the witnesses would, therefore, not be material; its only relevance would be to Maldonado's credibility. This brings into play Federal Rule of Evidence 608(b) which provides in pertinent part:

(b) Specific instances of conduct.—Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

We have consistently upheld the right of the district court to exclude extrinsic evidence, the only purpose of which is impeachment. *United States v. Barrett,* 766 F.2d 609, 615 (1st Cir.1985); *United States v. Espinal,* 757 F.2d 423, 425 (1st Cir.1985); *United States v. Tracey,* 675 F.2d 433, 440 (1st Cir.1982); *United States v. Ciampaglia,* 628 F.2d 632, 641–42 (1st Cir.1980); *United States v. Fortes,* 619 F.2d 108, 118 (1st Cir.1980); *Tigges v. Cataldo,* 611 F.2d 936, 938 (1st Cir.1979).

We find that the district court acted well within its discretion in refusing to authorize subpoenas for the seven individuals named by Maldonado in his testimony.

## IV. THE EVIDENCE

■ The final issue is whether the evidence was sufficient for the conspiracy conviction. In reviewing a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Santiago,* 828 F.2d 866, 870 (1st Cir.1987). In making this determination, we do not assess the credibility of the witnesses, which is the sole function of the trier of fact. *Burks v. United States,* 437 U.S. 1, 16, 98 S.Ct. 2141, 2149–50, 57 L.Ed.2d 1 (1978); *United States v. Santiago, supra.* Nor does the government have to disprove every reason-

able hypothesis of innocence, it is sufficient that the record as a whole supports a conclusion of guilt beyond a reasonable doubt. *United States v. Santiago, supra.*

Before assessing the evidence, we first state the necessary elements for a RICO conspiracy: "(1) the existence of an 'enterprise,' (2) that the defendant knowingly joined the enterprise and (3) that the defendant agreed to commit, or in fact committed, two or more specified predicate crimes as part of his participation in the affairs of the enterprise." *United States v. Anguilo,* 847 F.2d at 964; *United States v. Winter,* 663 F.2d at 1136.

Enterprise is defined in 18 U.S.C. § 1961(4): " 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]"

We now turn to the evidence. It is to be noted at the outset that Torres Lopez was the sole defendant. When the case started, Hector Acevedo–Ramos was also a defendant but pled guilty after two days of trial. All of the other defendants pled guilty after the indictment was returned and prior to the start of trial.

The first element to be proven was the existence of an "enterprise." The evidence on this was overwhelming and shocking. The government proved through the mouths of the members of the enterprise that, under the leadership of Maldonado, a group of policemen, who constituted the core of the Criminal Investigation Corps of the Puerto Rico Police Department, systematically engaged in crime for profit. Every police officer charged or named in the indictment testified in detail about the crimes in which he and his fellow officers were involved. Their testimony, both singly and collectively, made it unmistakable that defendant, as second in command to Maldonado, was part of the "enterprise" from its beginning in 1973. He participated actively in the enterprise's criminal activities and took his share of its ill-gotten gains.

There can be no question either that the evidence was more than sufficient, in fact overwhelming, to prove that defendant participated actively in the two predicate acts of which the jury found him guilty: the robbery and attempted murder of Francisco Rivera Pitre in October of 1973 and arson on or about December 19, 1974. Not only did the other police participants in the robbery of Rivera testify in detail about what happened and defendant's role in the crime, but the victim himself identified defendant as one of the perpetrators. The testimony was that defendant was the one assigned to kill Rivera. That this did not happen was not because of any mercy on the part of defendant or his police accomplices, but because of the courage and resourcefulness of Rivera. Despite being handcuffed, Rivera managed to escape. He had been taken by car into a sugar cane field. Rivera knew, when he was told to get out of the car by defendant, that death was imminent. He made a break for it and managed to elude capture by defendant and the two other police officers who searched for him.

Maldonado testified that he and defendant were hired to burn a clothes factory. Maldonado's testimony was that he and defendant did the actual torching. They first used alcohol as a starter but when that did not work satisfactorily, they bought some gasoline at a gas station, which worked fine. Defendant received three thousand dollars for his work. Ironically, the owners of the building who, through an intermediary, had hired defendant and Maldonado, were not able to collect on the insurance policy.

As we have already held, the conspiracy charge must be treated separately from the substantive charge. The fact that the predicate acts are time-barred by the statute of limitations in the substantive count does not mean that they cannot be considered in determining whether defendant was part of a RICO conspiracy. 18 U.S.C. § 1961(5) provides: " 'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity[.]" The

predicate acts of which defendant was found guilty easily fit within this definition. The evidence established beyond a reasonable doubt: that the conspiracy continued at least to the date of the indictment; the existence of a RICO "enterprise"; that defendant knowingly joined the enterprise; and that defendant committed two specified crimes as part of his participation in the affair of the enterprise. We, therefore, affirm defendant's conviction under 18 U.S. C. § 1962(d)—the conspiracy count.

We have considered all the other arguments raised by appellant and find them to be without merit.

*The conviction on Count One is reversed; the conviction on Count Two is affirmed.*