857 F.Supp. 1000 (1994)
Angel Torres LÓPEZ
v.
UNITED STATES of America.
Civ. No. 92-2205 (JP).
United States District Court, D. Puerto Rico.
July 15, 1994.
*1001 Angel Torres López, pro se.
Salixto Medina Malavé, Asst. U.S. Atty., Hato Rey, P.R., for defendant.

*1002 OPINION & ORDER

PIERAS, District Judge.
The Court has before it petitioner's motion for habeas corpus relief (docket No. 2) filed pursuant to 28 U.S.C. § 2255, respondent's opposition (docket No. 10), and petitioner's reply (docket No. 14). Since the record and motions filed in this case clearly demonstrate that the petitioner is not entitled to habeas corpus relief, his petition is hereby DENIED without a hearing.[1]

I. BACKGROUND
On June 26, 1986, the Grand Jury returned a five-count Indictment charging petitioner and eight other defendants with substantive and conspiracy violations of the Racketeer Influenced and Corrupt Organizations Act (hereinafter "RICO"), 18 U.S.C. §§ 1962(c), 1962(d). The Indictment also charged petitioner with obstruction of the due administration of justice, 18 U.S.C. § 1503. On November 24, 1986, a Superseding Indictment was returned which contained identical charges against the same defendants corrected for typographical and technical errors.
The five-count Superseding Indictment was based on eighteen (18) predicate crimes covering a period of about twelve years, which charged petitioner and eight other co-defendants with various criminal acts, including, but not limited to: murders, contract murders, kidnappings, contract arsons, armed robbery, and theft from interstate commerce. Specifically, the government charged petitioner in Count One with participating in seven of the eighteen charged predicate acts, namely: armed robbery, two acts of arson, robbery, robbery and murder, contract murder, and obstruction of justice by threatening to kill a government witness. Count Two charged petitioner with conspiracy to violate RICO by participating in an enterprise created for perpetrating criminal acts. Finally, Count Five charged the petitioner with obstruction of justice by threatening to kill a government witness. Throughout the investigation and prosecution of these crimes some defendants became witnesses for the government.
All defendants except for the petitioner pled guilty to some of the counts in the Indictment, and one of them pled guilty after three days of trial. During their change of plea hearings, these defendants recounted in shocking detail their involvement in each of the above mentioned crimes. Also, these defendants revealed the names and actions of their co-conspirators. What made these crimes all the more heinous was the fact that the enterprise was headed by an officer in the Criminal Investigation Corps of the Puerto Rico Police Department, defendant Alejo Maldonado Medina. Other police officers and co-conspirators served as triggermen, robbing, kidnapping, murdering, torching, and even pulling off an armed robbery of the Police Cooperative Savings and Loan.
Petitioner, Angel Torres López, was the only defendant to go through trial. On February 8, 1987, after an eleven-day trial, the jury acquitted the petitioner of Count Five of the Indictment, which charged him with obstruction of the due administration of justice, but convicted him of Counts One and Two, the substantive and conspiracy RICO counts. Along with the general verdict form, the jury also returned a special verdict form, its use and content agreed to by the parties in open Court, which detailed each predicate racketeering act with which the defendant was allegedly directly involved. In its special verdict form the jury found the petitioner implicated in racketeering act one, the armed robbery of Francisco Rivera Petrie on October of 1973, and racketeering act five, the contract arson of "Riviera Casuals" on December 19, 1974. The jury found that the defendant was not directly involved in racketeering acts twelve (a) through twelve (c), which involved the contract murder of Luis Rolón in 1979, and not directly involved in racketeering acts eighteen (a) and eighteen (b), which involved the obstruction of justice by interfering with a government witness in *1003 1985.[2] The jury was unable to reach a verdict on defendant's participation in racketeering acts number four (contract arson in 1974), seven (armed robbery in 1976), and eleven (murder in 1979).
After the jury verdict petitioner made a motion for judgment of acquittal arguing that since the jury had not found him guilty of any specific racketeering act committed after 1974, the RICO statute of limitations mandated that the guilty verdict on both counts be declared null and void. On April 15, 1987, the Court denied his Rule 29 motion and sentenced petitioner to twenty (20) years for each count, said terms to run consecutively. Also, the Court imposed a Ten Thousand Dollars ($10,000.00) fine on the RICO conspiracy count, and a Fifteen Thousand Dollars ($15,000.00) fine on the substantive RICO count.
Petitioner filed a timely appeal on April 21, 1987. See United States v. Torres López, 851 F.2d 520 (1st Cir.1988). Based on petitioner's argument that the RICO statute of limitations precluded a guilty verdict, the Court of Appeals reversed petitioner's conviction on Count One. Id. at 525. However, the Court of Appeals upheld the conviction under Count Two because it found that the commission of an overt act is not required for a RICO conspiracy conviction. Id. Therefore, the fact that the defendant could not be convicted under Count One did not preclude in any way a conviction for a RICO conspiracy under Count Two. All other arguments presented by the petitioner were found to be without merit.[3]
The petitioner continued to attack his conviction and sentence by requesting from the Court of Appeals a Rehearing En Banc, which was denied August 22, 1988. On November 21, 1988, the petitioner filed for a writ of certiorari to the United States Supreme Court, which was denied February 21, 1989. See Torres-López v. United States, 489 U.S. 1021, 109 S.Ct. 1144, 103 L.Ed.2d 204 (1989). Afterwards, the petitioner filed in this Court a motion to reduce or vacate his sentence on May 5, 1989, pursuant to Rule 35 of the Federal Rules of Criminal Procedure. The Court denied his motion June 21, 1989. On January 22, 1991, the petitioner requested a correction of his Pre-Sentence Investigation Report, which was denied March 15, 1991. Finally, petitioner filed the instant petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.[4]

II. DISCUSSION
For purposes of simplicity and clarity, the Court will address petitioner's claims in four separate arguments: (1) the cross-examinations of the Consuegra witnesses, (2) the assistance of counsel on appeal, (3) the Pinkerton instruction given to the jury at trial, and (4) the sentence imposed.

A. The Cross-Examination of the Consuegra Witnesses

During the sixth day of petitioner's eleven-day trial, the government called Francisco Consuegra and Mario Consuegra Vera (father and son) to testify. These witnesses testified in some detail as to the facts surrounding Mario Consuegra's kidnapping. Through the testimony of these two witnesses the government was trying to establish that Mario Consuegra's kidnapping was one of the overt acts performed by and for the RICO conspiracy charged in the Indictment.
*1004 Petitioner argues that during the cross-examination of the two Consuegra witnesses the Court committed two fatal mistakes which violated his constitutional rights. First, the petitioner argues that the Court violated his Sixth Amendment right to confront witnesses against him by limiting the time available for cross-examination. Second, the Court allegedly usurped the jury's function as the sole arbiter of facts by sustaining an objection made by the government and stating: "Objection sustained. Objection sustained. I think you asked enough already. It is understood that this particular case has nothing to do with the defendant in this case in that the defendant was not involved in this case, and that should suffice." Transcript for the Sixth Day of Jury Trial, p. 33. The error was compounded, the petitioner argues, by the Court's failure to instruct the jury, after its remarks, that they were the sole arbiter of the facts.
In order to clearly understand petitioner's argument as well as the comments made by the Court it is important to examine the transcript in its entirety regarding the Consuegra cross-examinations. The transcript provides:
CROSS-EXAMINATION OF MR. MARIO CONSUEGRA
BY MR. HERRERO:
Q To your best knowledge, what was the way that the people that kidnaped you looked? What were they like?
MR. HERNANDEZ: Your Honor, the Government will stipulate that the defendant, Angel Torres López, is not involved in any such kidnaping.
MR. HERRERO: I don't want any such stipulation. I want the witness to reply.
THE COURT: Go ahead.
THE WITNESS: Remember that I cannot identify the persons because their heads were covered.
BY MR. HERRERO:
Q And during the course of this terrible experience for you, were the people responsible for the kidnaping eventually arrested?
A On a prior occasion I was in a court of justice, sir.
Q Did you testify about this experience, just as you have today?
A Yes, sir.
Q And do you recall in what court that was, Mr. Consuegra?
A In the court in Old San Juan.
Q This same building?
A Yes, sir.
Q Was it a federal trial?
A I think so.
Q Do you recall the prosecutors in that case?
A One of them was Guillermo Gil.
Q And what about the others?
A I don't remember the names.
Q But it was a kidnaping trial in which there were some defendants.
A Could you repeat the question?
Q It was the same trial for your kidnaping before the federal court, was it not?
A Sir, the only thing I did was go to the court to testify what had occurred to me.
Q Yes, I know. And you testified the same that you have testified today.
A Yes, sir.
Q And you have testified the truth?
A Sure, sir.
Q And as a result of your testimony, people were convicted of having kidnaped you and having done all of this to you.
A Sir, I repeat. I was testifying.
Q So you don't know who the defendants were when you testified?
A They were in front of me.
Q All right. How long were you able to see them?
A I don't remember the time.
Q Now, do you see that man with the bald head there?
A Yes, sir, I see him.
Q Was he ever a defendant in that case?
A I don't remember.
Q You do not remember whether you saw him or not in this case, sitting among the defendants?
A I don't think I saw him.

*1005 Q Well, think back. It's very important. Isn't it true that if I mention the name Angel Torres López, Licenciado Angel Torres Lópezdid that man's name ever come up as a defendant in that case, in your kidnaping case?
A I don't remember, sir.
Q But isn't it true that he was not among the defendants in that case?
A I don't remember having seen him among the defendants in that case.
Q Let's see if I can refresh your memory somewhat. Isn't it true that the defendant in your kidnaping case was Alejo Maldonado Medina? Now, does that name ring a bell to you? Does that name refresh your memory?
A I think that is correct.
Q You think, or you are sure?
A I saw him in the front part in the court. I mean, in court, in a courtroom like this.
Q Sitting
THE COURT: Well, the U.S. Attorney has admitted that this defendant, Angel Torres López, was not a part of this kidnaping nor was he a defendant or accused or anything. So, I mean, these questions are superfluous.
MR. HERRERO: Then I have no further questions. Thank you, your Honor.
THE COURT: Any other questions of this witness?
MR. MEDINA: No, your Honor.
THE COURT: You may leave....
* * * * * *
CROSS-EXAMINATION OF MR. FRANCISCO CONSUEGRA
BY MR. HERRERO:
Q Don Francisco, you have testified before about the horrible experience that you and your family went through, have you not?
A Yes.
Q And as a result of a federal case, people were convicted of this kidnaping of your son.
A Yes.
Q Would you give us the names of those persons.
A Well, one of them is Alejo Maldonado, and the other one is César Caballero. The other one, I don't remember his name.
Q Do you know if they were sentenced, by a federal court judge in this building, to jail?
A Yes, they were sentenced.
Q Do you recall the prison sentences that they were given?
MR. MEDINA: What is the materiality?
THE COURT: Objection sustained. Objection sustained. I think you asked enough already. It is understood that this particular case has nothing to do with the defendant in this case in that the defendant was not involved in this case, and that should suffice.
MR. HERRERO: Thank you, your Honor. Thank you Don Francisco.
THE COURT: You can leave....
Id. pp. 20-23, 32-33.
The transcript reveals that petitioner's Sixth Amendment right to confront adverse witnesses was not violated. The Sixth Amendment provides in part: "In all criminal prosecutions, the accused shall enjoy the right to ... be confronted with the witnesses against him; ...." U.S. Const.Amend. VI. One of the major goals of the confrontation clause of the Sixth Amendment is to provide the defendant with an opportunity to cross-examine adverse witnesses. Bruton v. United States, 391 U.S. 123, 126, 88 S.Ct. 1620, 1622, 20 L.Ed.2d 476 (1968). The main purpose of "confrontation" is to avoid depositions or ex-parte affidavits from being introduced as evidence at a trial instead of personal testimony which could be directly evaluated by the trier of fact. See Barber v. Page, 390 U.S. 719, 721, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255 (1968). Therefore, the accuracy of the truth determining process in criminal trials is safeguarded by requiring witnesses against an accused to appear in court and be subjected to cross-examination. See Maryland v. Craig, 497 U.S. 836, 845-46, 110 S.Ct. 3157, 3163, 111 L.Ed.2d 666 (1990). These goals were satisfied during petitioner's trial.
*1006 Immediately after the first question asked by petitioner's attorney during Mario Consuegra's cross-examination, the government offered to stipulate that the petitioner was not involved in the act of kidnapping previously described by Mr. Mario Consuegra. Transcript for the Sixth Day of Trial, p. 20. Petitioner's attorney refused to stipulate at the time, and requested that Mr. Mario Consuegra be allowed to respond. The Court allowed him to proceed with the cross-examination. However, after another twenty one (21) similar questions the Court interrupted petitioner's attorney and stated that the line of questioning appeared superfluous because the government had stipulated that the petitioner was not a part of the kidnapping, nor was he ever accused of kidnapping in any prior proceeding. Id. at 23. Petitioner's attorney responded to the Court by stating: "Then, I have no further questions." Id. Therefore, petitioner's attorney was only trying to establish that his client was not a part of the kidnapping; something that was not an issue in petitioner's trial. The record also reveals that all twenty one (21) questions asked after the initial government stipulation were directed at proving exactly what the government was willing to stipulate to; namely, that the petitioner had not been a part of the kidnapping nor had he been tried or convicted for that crime. However, at no moment did the Court preclude petitioner's attorney from exploring other areas of questioning which might have benefitted his client, if indeed any such areas were available, nor did the attorney make such a request.
In essence, petitioner's attorney made a tactical choice that no other questions were necessary. In light of the fact that the attorney had no other relevant questions for the witness, the petitioner suffered no prejudice to his Sixth Amendment right during Mario Consuegra's cross-examination. He was provided with the opportunity to confront Mario Consuegra, and he used that opportunity in the manner that he saw fit. The same analysis applies to Francisco Consuegra's cross-examination. Again, petitioner's attorney had the opportunity to cross-examine Mr. Francisco Consuegra. During the cross-examination, petitioner's attorney only tried to elicit from the witness whether the petitioner had participated in the kidnapping. After a renewed objection by the government, the Court reminded petitioner's attorney that his line of questioning served no useful purpose because what he was trying to establish was not in controversy. Because the purpose of the Consuegra testimonies was not to establish that the petitioner had participated in the kidnapping, but to establish that the kidnapping had taken place, petitioner's line of questioning was indeed unnecessary. In fact, the stipulation offered by the government could only help the petitioner by ensuring that the jury would not get the mistaken impression that he had participated or been found guilty of kidnapping in a prior proceeding. Therefore, the Court did not violate his Sixth Amendment right since the petitioner had a meaningful opportunity to cross examine the Consuegra witnesses.
Petitioner's second argument is also without merit. The statements made by the Court during the Consuegra's cross-examinations did not take away an issue of fact for the jury's determination. Within Count One of the Indictment, the government specifically charged petitioner and tried to prove his involvement in 1) the contract murder of Luis Rolón, 2) obstruction of justice, 3) contract arson, 4) armed robbery, and 5) murder in 1979.
The issue of whether the petitioner participated in a kidnapping was not placed before the jury because the issue was never in question. The government did not try to prove that the petitioner participated in a kidnapping. Thus, no controversy of fact existed for the jury to decide. Simply put, the Court cannot ask the jury to decide something that is not available for them to decide. Therefore, the Court could not have taken away from the jury an issue of fact which never existed for them to consider in the first place.

B. Ineffective Assistance of Counsel

Petitioner's ineffective assistance of counsel argument is closely linked to his arguments regarding the alleged violation to his Sixth Amendment right to confront adverse *1007 witnesses. Specifically, petitioner claims that he received ineffective and prejudicial assistance of counsel on appeal because his attorney failed to present to the First Circuit Court of Appeals the alleged violation of his Sixth Amendment right to confront adverse witnesses during the Consuegra cross-examinations, and because the brief submitted was allegedly hard to read and replete with grammatical errors. We address each issue in turn.
Petitioner's appellate counsel did not fail in his duty of competent representation by deciding not to include in his argument to the First Circuit Court of Appeals petitioner's new Sixth Amendment claim. In light of the Court's discussion in the prior section regarding the Consuegra cross-examinations, and of the clarity of the record, petitioner's Sixth Amendment rights were not violated during the Consuegra cross-examinations. Petitioner's counsel had the opportunity at trial to cross-examine these witnesses on relevant matters. Therefore, the fact that counsel failed to bring this argument at the appellate level did not prejudice the petitioner in any way since he does not have a cognizable claim. Furthermore, petitioner's appellate counsel could not have in good conscience and in accordance with his responsibility to the Court made an argument that on its face lacked merit.
Petitioner's second argument claiming ineffective assistance of counsel due to alleged grammatical mistakes in his appellate brief also lacks merit. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court of the United States established that the Sixth Amendment right to counsel includes the right to an effective assistance of counsel. United States v. Natanel, 938 F.2d 302, 309 (1st Cir.1991). However, "[t]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of a reasonably effective assistance under the circumstances...." Natanel, 938 F.2d at 309-10, citing Strickland, 466 U.S. at 687-88, 104 S.Ct. at 2064 (1984). Therefore, in order to avoid examining counsel's conduct with the benefits of hindsight, "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. In essence, a reviewing court must make a determination, after examining the facts of the case in light of the circumstances at the time of the incident, whether counsel's acts or omissions fall outside the "wide range of professionally competent assistance." Id. at 690, 104 S.Ct. at 2066.
After a careful examination of the appellate brief submitted on petitioner's behalf, the Court finds that petitioner's counsel on appeal, with the help of the appellate brief, was able to provide a competent representation to his client. While the brief may contain some grammatical mistakes the overall quality of the brief was not affected; it conveyed the necessary points and legal arguments for an effective appeal. Indeed, the brief must have been able to convey to the First Circuit Court of Appeals the correct arguments since the Court granted petitioner's appeal in part, dismissing his conviction as to Count One of the Indictment. See Torres López, 851 F.2d at 525. Therefore, petitioner simply received a complete and effective assistance of counsel on appeal.

C. The Pinkerton Instruction

The petitioner argues that a Pinkerton instruction given by the Court prejudiced the jury and may have even forced the jury to find him guilty on Count Two; the conspiracy charge. The instruction, which we shall examine shortly, allegedly prejudiced the jury because it may have led the jury to find that the petitioner was a part of the conspiracy based solely on the two substantive acts charged under Count One of the Indictment. Since the Court of Appeals held that the RICO statute of limitations prevented a conviction under the two acts charged under Count One, the petitioner now argues that the possibility exists that the jury found him guilty of the conspiracy charge based on the two acts barred by the statute of limitations. The petitioner then goes on to argue again, as he did in his appeal to the First Circuit Court of Appeals, that the guilty verdict on the conspiracy charge cannot stand since the conspiracy could have only been based on the charges barred by the statute *1008 of limitations. Before examining petitioner's arguments, it is important to understand the nature of a Pinkerton instruction.
A Pinkerton instruction explains to the jury that it may consider evidence of statements or acts done by another person as if they were made by the defendant if it finds that (1) a conspiracy existed, (2) substantive offenses were committed as part of that conspiracy and (3) that the defendant was a member of the conspiracy at that time. Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). This instruction is therefore used to let a jury know that it can find a defendant guilty of a substantive act done in furtherance of a conspiracy once it finds that the defendant was part of a conspiracy at the time that the alleged criminal acts were committed. The Court gave the following Pinkerton instruction to the jury in this case:
"Whenever it appears beyond a reasonable doubt from the evidence in the case that a conspiracy existed, and that a defendant was one of the members, then the statements thereafter knowingly made and the acts thereafter knowingly done, by any person likewise found to be a member, may be considered by the jury as evidence in the case as to the defendant found to be a member, even though the statements and acts may have occurred in the absence and without the knowledge of the defendant, provided such statements and acts were knowingly made and done during the continuance of such conspiracy, and in furtherance of some object or purpose of the conspiracy."
Transcript for the Eleventh Day Trial, p. 178.
In light of the purpose behind a Pinkerton instruction, and of the instruction actually given in this case, it is apparent that petitioner's argument misconstrues the law and is only a confused attempt at trying to introduce through the back door an issue previously litigated in his appeal before the First Circuit Court of Appeals.[5] During his appeal to the First Circuit Court of Appeals, the petitioner argued that his RICO conspiracy conviction was barred by the general five-year statute of limitations contained in Title 18, Section 3282 of the United States Code. The Court specifically explained that:
As we have already held, the conspiracy charge must be treated separately from the substantive charge. The fact that the predicate acts are time-barred by the statute of limitations in the substantive count does not mean that they cannot be considered in determining whether defendant was part of a RICO conspiracy. (Emphasis added).
Torres López, 851 F.2d at 528. Therefore, the fact that the petitioner was originally convicted of acts which were time barred by the statute of limitations simply has nothing to do with the validity of his conspiracy conviction. See Torres López, 851 F.2d at 522-25. Furthermore, a Pinkerton instruction cannot prejudice a jury into finding a defendant guilty of a conspiracy where the instruction itself is directed at enabling a jury into finding a defendant guilty of substantive criminal acts only after finding that the defendant was part of a conspiracy. The Pinkerton instruction given by the Court simply had nothing to do with finding the petitioner guilty of belonging to the conspiracy, but rather, of finding the petitioner guilty of substantive acts in furtherance of the conspiracy.
The petitioner then tries to bootstrap his confused argument into a valid assertion by claiming that in his case a Pinkerton instruction should not have been given by the Court. Relying on United States v. Sperling, 506 F.2d 1323, 1341-42 (2nd Cir.1974) cert. denied 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975), the petitioner argues that his case is the sort of "marginal case" in which a Pinkerton instruction causes some concern. *1009 Petitioner's argument is unconvincing and his reliance on Sperling is misplaced.
In Sperling, Judge Timbers correctly expressed some concern about giving Pinkerton instructions as a matter of course in cases where evidence of the existence of a conspiracy is slight. However, the facts in Sperling are different from the facts in this case. In Sperling the government produced a substantial amount of evidence regarding substantive criminal acts performed by the individual defendants. However, the government had not been able to provide much evidence on the existence of a conspiracy. Therefore, even though the Court found that the Pinkerton instruction had not been prejudicial in the Sperling case, Judge Timbers cautioned that trial courts should evaluate carefully the facts and evidence of every individual case before giving a Pinkerton instruction. For example, providing a Pinkerton instruction in circumstances where the evidence of a conspiracy is minimal might prejudice the defendant by confusing the jury into believing that evidence of substantive acts might prove the existence of a conspiracy. However, this is not the "marginal" case that Judge Timbers was concerned about. The evidence in this case regarding the existence of a conspiracy was overwhelming. As the First Circuit Court of Appeals stated:
The government proved through the mouths of the members of the enterprise that, under the leadership of Maldonado, a group of policemen, who constituted the core of the Criminal Investigation Corps of the Puerto Rico Police Department, systematically engaged in crime for profit. Every police officer charged or named in the indictment testified in detail about the crimes in which he and his fellow officers were involved. Their testimony, both singly and collectively, made it unmistakable that defendant, as second in command to Maldonado, was part of the "enterprise" from its beginning in 1973. He participated actively in the enterprise's criminal activities and took his share of its ill-gotten gains.
Torres López, 851 F.2d at 528. The evidence in this case is not only sufficient, but in fact is overwhelming as to petitioner's participation in the conspiracy. The Pinkerton instruction was properly given and the petitioner suffered no prejudice as a result of the instruction.

D. Vindictive Sentence

Finally, the petitioner contends that the Court imposed the maximum sentence possible as punishment for his decision to exercise his constitutional right to stand trial. Petitioner then argues that evidence of retaliation can be found by comparing his sentence to the sentences received by his co-defendants. Certainly, a sentence would be unconstitutional if imposed as retaliation for a defendant's insistence to stand trial. See United States v. Mazzaferro, 865 F.2d 450, 457-60 (1st Cir.1989). However, the facts do not support defendant's unsubstantiated allegation that he received an excessive sentence.
Except for the petitioner, all defendants in this case pled guilty prior to the completion of trial. After the jury found petitioner guilty under Counts One and Two of the Indictment, the Court sentenced the petitioner to twenty years as to each count with a fine of Fifteen Thousand Dollars ($15,000.00) and Ten Thousand Dollars ($10,000.00) respectively. The imprisonment terms represented the maximum term permitted by the statute, and the Court ordered that these terms be served consecutively.[6] On appeal, the First Circuit reversed petitioner's conviction as to Count One. Thus, petitioner is currently serving only one twenty-year sentence imposed for Count Two which includes a fine of Ten Thousand Dollars ($10,000.00).
In order to examine petitioner's claim it is important, as the petitioner suggests, to compare the sentences received by his co-defendants. These sentences reflect the specific benefits received in exchange for their plea agreements. For example, the government agreed to dismiss certain counts from the Indictment in the case as well as counts pending in other cases. Also, the government specifically agreed with certain co-defendants *1010 not to recommend consecutive sentences to the Court or at least not to make any recommendations whatsoever. However, as the record reflects, the advantages enjoyed by petitioner's co-defendants do not translate into an impermissible punishment or disadvantage to the petitioner. Petitioner's co-defendants were sentenced as follows:
1. Luis Gómez Ferreiro was sentenced on December 10, 1986, to a prison term of twelve years to run concurrently (as recommended by the government in the plea agreement) with a five-year term of imprisonment imposed in Criminal Case number 86-464.
2. Guillermo Torres Verdú was sentenced on February 12, 1987, to a prison term of sixteen years to run concurrently (as recommended by the government in the plea agreement) with a four-year term of imprisonment imposed in Criminal Case number 86-455.
3. Luis Ramos Grateroles was sentenced on December 30, 1986, to a prison term of sixteen years to run concurrently (as recommended by the government in the plea agreement) with a five-year term of imprisonment imposed in Criminal Case number 86-464.
4. Hiram Vázquez Negrón was sentenced on March 19, 1987, to a prison term of sixteen years to be served concurrently with the sentence imposed in Criminal Case number 83-301.
5. César Caballero Rivera was sentenced on March 19, 1987, to a prison term of twenty years to be served concurrently (as recommended by the government in the plea agreement) with a sentence imposed in Criminal Case number 84-229.
6. Eugenio Rivera Figueroa was sentenced on March 19, 1987, to a prison term of eight years to be served concurrently (as recommended by the government in the plea agreement) with the sentence imposed in Criminal Case number 84-229.
7. Alejo Maldonado Medina was sentenced on March 25, 1987, to twenty years imprisonment to run concurrently (as recommended by the government in the plea agreement) with a twenty-year term of imprisonment imposed in Criminal Case number 82-196.
8. Héctor Acevedo Ramos was sentenced on April 9, 1987, to fifteen years for Counts One and Two to be served consecutively to the sentences imposed in Criminal Cases numbers 84-373 and 85-180 and fined Forty Thousand Dollars ($40,000.00).
After examining the above mentioned sentences and the circumstances in which they were imposed, the Court cannot find a significant disparity between petitioner's sentence and those received by his co-defendants. Two co-defendants are serving prison terms of twenty years. Another three defendants are serving sixteen-year terms. Héctor Acevedo Ramos was sentenced to a fifteen-years prison term to be served consecutively with sentences imposed in other cases and fined Forty Thousand Dollars ($40,000.00). Petitioner's sentence might only be considered disparate when compared to the eight-year prison term being served by co-defendant Rivera Figueroa. However, an examination of petitioner's role in the criminal conspiracy reflects that he was "second in command" to Alejo Maldonado and that he was a major participant in the RICO conspiracy. In light of these facts petitioner's sentence was not only fair but warranted.
Petitioner then argues that his situation is similar to the situation encountered by a defendant in United States v. Mazzaferro, 865 F.2d 450 (1st Cir.1989). In Mazzaferro, all of appellant's co-defendants entered into plea agreements with the government in exchange for certain concessions and were sentenced each to ten years. Id. at 457. Mazzaferro, on the other hand, received a twenty-year sentence and a Twenty-Five Thousand Dollars ($25,000.00) fine as to Count One, and concurrent twenty-year sentences in Counts Two and Three after being found guilty at trial. Id. The record showed that Mazzaferro had a much more limited role in the criminal operation than one of his co-defendants and that he had a limited criminal record. The Court of Appeals set aside Mazzaferro's sentence and remanded the case for re-sentencing because in light of the disparity between the sentences it could not rule out the possibility of vindictiveness. However, and once again, the situation in the case at bar is completely different. The sentences *1011 imposed in this case are certainly similar in length and, in light of the crimes committed, petitioner's role, and the pre-sentence report, petitioner's sentence cannot be considered vindictive.[7]
In a related claim, the petitioner argues that the fine portion of his sentence cannot stand as it represents a violation of his constitutional right to due process of law. He claims that the Court should have conducted a special hearing to determine his ability to pay a fine. Before the Court imposed petitioner's sentence it had the opportunity to study the pre-sentence report as well as any objections which petitioner's counsel could have presented. No objections were presented. In light of the information available at the time, the Court imposed the fine as it found that the defendant was indeed capable of paying the fine. For example, the Court had the opportunity to evaluate the government's request for the imposition of a Twenty Thousand Dollars ($20,000.00) fine as to each count as well as two different requests for restitution which amounted to about Two Hundred and Twenty Thousand Dollars ($220,000.00). The Court denied the government's request but found that the petitioner would be able to pay a total of Twenty-Five Thousand Dollars ($25,000.00) as to both counts. Thereafter, the petitioner failed to appeal the fine imposed. The petitioner simply has not pointed to any egregious constitutional violation that the Court can perceive. Furthermore, as the government argued, petitioner's claim as to his fine is premature. See United States v. Levy, 897 F.2d 596, 598 (1st Cir.1990). Once and if the petitioner finishes his sentence, and is then unable to pay his stand-committed fine, the Court may be in a better position to determine if the fine was incorrectly imposed. For now, however, petitioner's claim must be denied.
IT IS SO ORDERED.
NOTES
[1] After filing the brief in support of his motion for habeas corpus relief, the petitioner filed a motion requesting the Court to provide a Court-appointed counsel (docket No. 13). The motion is hereby DENIED.
[2] Exoneration on this allegation, of course, is consistent with the jury verdict of not guilty on Count Five of the Indictment.
[3] As phrased by the First Circuit Court of Appeals, the petitioner raised four main arguments which merited some consideration; 1) the applicability of the five-year statute of limitations to the RICO substantive and conspiracy conviction, 2) whether the petitioner was denied the right to a speedy trial, 3) whether petitioner's Sixth Amendment right to compulsory process was violated, and 4) the sufficiency of the evidence.
[4] As the petitioner recognized in his brief, under the "cause and prejudice" analysis set out in United States v. Frady, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), constitutional arguments not presented on direct appeal will probably not be considered in a habeas corpus motion. However, the case law is still evolving on this point. In any event, in the case at bar it is not necessary to enter into an analysis of whether petitioner's arguments are procedurally barred since the arguments presented lack any substantive merit.
[5] Questions or issues disposed of on a previous appeal will not be reviewed again by way of a habeas corpus motion. Jonston v. United States, 832 F.2d 1 (1st Cir.1987); Tracey v. United States, 739 F.2d 679 (1st Cir.1984), cert. denied 469 U.S. 1109, 105 S.Ct. 787, 83 L.Ed.2d 781 (1985), rehearing denied 470 U.S. 1024, 105 S.Ct. 1385, 84 L.Ed.2d 404 (1985). Thus, petitioner is procedurally barred from renewing his claim. However, since petitioner's claim lacks any merit it is not necessary to consider the issue of a procedural bar at this juncture.
[6] The Sentencing Guidelines had not yet taken effect.
[7] Petitioner also argues that the fact that he was a former policeman and attorney at law warranted a lower sentence. The Court strongly disagrees. No court can look favorably at a law enforcement officer or member of the bar committing criminal acts. In fact, the opposite is true. See U.S.S.G. §§ 3B1.2, 5H1.2. Therefore, petitioner's claim must be denied.